# CHARLESTON

## DEVANNEY *v.* HANSON.

## Submitted March 6, 1906.    Decided April 24, 1906.

1. CITIZENS—*Who Are—Of Counties.*
    A county has no citizen, in a legal sense.   (p. 5.)

2. SAME—*Presumptions.*
    A person residing in a state is presumed to be a citizen thereof. (p. 6.)

3. INTOXICATING LIQUORS—*Nuisances—Abatement.*
    The word "citizen" as used in section 24, chapter 36, Acts of 1905, means a resident of a county.   (p. 6.)

4. SAME—*Grant of License.*
    By section 10, chapter 36, Acts of 1905, a county court is prohibited from granting license to sell intoxicating drinks within two miles of an incorporated city, town or village, without the consent of its council.   A license granted without such consent is void and sales under it violate the law.   (p. 6.)

5. SAME—*Consent to License.*

The written record of an order of a council of a city, town or village granting its consent to a person to obtain license to sell intoxicating liquors, must be produced to show such consent, or its absence fairly accounted for. (p. 7.)

6. SAME—*Nuisance—Injunction.*

Equity has jurisdiction under section 24, chapter 36, Acts of 1905, to enjoin a nuisance arising from sale of intoxicating drinks at a building contrary to law, and to enjoin the sale thereat, and to abate the public nuisance thus created. (p. 8.)

Appeal from Circuit Court, Kanawha County.

Bill by James Devanney against Carl Hanson and others. Decree for defendants, and plaintiff appeals.

*Reversed.*

MOLLOHAN, McCLINTIC & MATHEWS, for appellant.

CARL HANSON and WALKER, LAWRENCE & CO., *pro se.*

BRANNON, JUDGE:

James Devanney filed a bill in equity in the circuit court of Kanawha county against Carl Hanson and Walker, Lawrence and Company, alleging that the village of Cannelton is not incorporated and lies in Kanawha county next to the Fayette county line; that about 500 feet from Cannelton is situatued the incorporated town of Montgomery, in Fayette county; that there is situated in Kanawha county about one mile below Cannelton and the particular house stated to be a house owned by Walker, Lawrence & Company, the incorporated town of Union Mines, in Kanawha county; that the county court of Kanawha county had granted license to Hanson to sell spirituous liquor at a house owned by Walker, Lawrence & Company in the village of Cannelton, and that Hanson was there selling liquor contrary to law. The bill alleged that the license from the county court was granted without a permit from the town of Union Mines; that whilst there was presented to the county court a paper purporting to show such permit for such license by the town of Union Mines, in fact it was not such. The bill exhibits a mere certificate purporting to be signed by E. S. Norton, Mayor, and C. B. Whitlock, Recorder, of the town of Union Mines, stating that the town council had given its consent to Hanson for obtaining such license. The bill averred that said Norton

and Whitlock had never signed the paper, and exhibited affidavits by them denying their signatures thereto. The bill charges that a meeting of the council of Union Mines was claimed to have been held, and that it granted such permit, but that no certificate thereof was at the time given to Hanson, and that later at a full meeting of the council on the same day the permit was revoked and refused, and the bill charged that no such consent of council was ever made, that no such permit was granted by said council. The bill claimed that the authority given by the county court was void, and did not justify Hanson in carrying on his business as a retail liquor dealer. The bill prayed that Hanson be enjoined from exercising said license, and selling liquor at said building, and that said building be held a public nuisance and abated as such. A preliminary injunction was awarded which, upon demurrer and motion to dissolve, was dissolved, and the bill dismissed, and Devanney appeals.

One question discussed in the case is right to sue. Ch. 36, Acts of 1905, re-enacting ch. 32 of the Code, in section 24, provides that all houses, buildings, and places where liquors are sold contrary to law, shall be held as common and public nuisances, "and courts of equity shall have jurisdiction by injunction to restrain and abate any such nuisance, upon bill filed by any citizen, or by the prosecuting attorney of any county or by any State officer, in the name of the State of West Virginia." Devanney's bill states that he is a citizen of Kanawha county. The answer calls for proof of this fact, but it admits that Devanney resides in that county. The statute requires that the individual suing be a citizen. What does that mean? There is no such thing as a citzen of any county. A person may be a citizen of a state or of the Union, because they are sovereign; but a county is a mere subdivision of a state with bodies executing functions assigned to them by the sovereign in process of government, but they are not sovereign. To be a citizen one must be "a member of an independent political society and as such subject to its law and entitled to its protection in the enjoyment of civil or private rights." 6 Am. & Eng. Ency. L. (2d Ed.) 15. "A citizen is one who, as a member of a nation or of the body politic of a sovereign state, owes allegiance to and may claim reciprocal protection from its government." 7 Cyc. 133. A

county is not an independent political society. It makes no law save in subordination to the state under authority conferred by it. The word "citizen" as used in this statute means only a resident. The statute is intended to protect residents, no matter whether they be aliens or citizens, against illegal liquor selling. However, if that were not the case as Devanney resides in Kanawha county, in the absence of proof to the contrary, "every man is considered a citizen of the country in which he may reside." 7 Cyc. 147.

There are certain statutes involved in the case. Chapter 36, Acts of 1905, reenacts chapter 32 of the Code of 1899, touching licenses. The new act in section 10, after providing for the granting of liquor license, contains a clause, "*provided* that no license shall be issued for the sale of intoxicating liquors within two miles of the limits of any incorporated city, town or village, without the consent of the council thereof first be obtained." Section 33, ch. 47, Code 1899, and sec. 9, ch. 39, forbid the granting of a liquor license to be exercised within a mile of the corporate limits of a town. Sec. 30, Ch. 36, Acts 1905, reads thus: "The granting of a license to any person to carry on any business for which a license is required, under any of the provisions of this chapter, shall not be construed to authorize him to carry on said business, unless he shall have complied with all the provisions of law requiring him to make any payment, obtain any certificate or permit, or to do any act as a condition of carrying on any such business." The section just quoted makes a license obtained without permission of a town affected by it of no avail. A license cannot be granted at a place within two miles of a town by the latest act. Even without this section the general law would say that a failure to obtain the town's consent would render the license abortive. The sale of liquor is regarded as an evil. The prerequisites to obtain the license are regarded material, like a condition precedent, and surely the consent of a town having right to refuse consent is a most material prerequisite. Without it there is no license under our law, and it gives no protection. Black on Intoxicating Liquors, section 137. A question discussed in this case is whether the town of Montgomery being in Fayette county and the license granted in Kanawha, the limit of two miles applies to Montgomery. We do not dis-

cuss that question, because the bill does not allege that there was no permit from the town of Montgomery. The answer filed in the case does admit that there was not, but that cannot supply the omission in the bill, especially on a demurrer and a motion to dissolve.

The bill does aver that the council of the town of Union Mines never gave its consent for said license. The answer alleges that a permit was granted by the council of Union Mines and delivered to Whitlock, a member of the council, who failed to deliver it to the county court or any one else, but destroyed the same; that the council rescinded its action granting the permit; that while the council resolved to grant a permit, no written permit was issued; that later it was again voted to grant a permit and Whitlock delivered the certificate filed with the bill to Hanson, and that on it the county court acted in granting license. Now, the bill averring that no such permit was given, and Hanson, relying upon the permit, and it being a prerequisite to the granting of a valid license under the law, the statute prohibiting the license without such permit, and it being Hanson's muniment of title or right, the burden rests upon him to show a permit valid by law. The statute requiring town permit is not directory, but prohibitory of license without it. Section 25, chapter 47, of the Code, says : "The council shall cause to be kept, in a well bound book, an accurate record of all its proceedings, by-laws, acts, orders and resolutions." Hanson does not state that the book shows any such action by the council. He does not file an order of the council. All there is touching the action of the council is a mere certificate purporting to be signed by the mayor and recorder that a permit was granted. That is no evidence. If genuine, that is only their opinion of the effect of the action of the council; it is only their declaration. It cannot prove the action of the council. *Roe* v. *Town*, 45 W. Va. 785; *Phares* v. *State*, 3 *Id.* 567. He should have presented a copy of the actual order of the council from the repository containing the primary and best evidence of the action of the council, or shown some excuse for not so doing. For what does the statute provide for the recordation of proceedings of such an important public body as the council of a city or town? Its acts must be proven by its records. 2 Smith on Munici-

pal Corporations, section 1699; 3 Elliot on Evidence, section 118; *Town* v. *Miller*, 46 W. Va. 334. Oral evidence not admissible to prove council acts, unless the absence of the record is satisfactorily explained. 17 Cyc. 506; *Phares* v. *State*, 3 W. Va. 567; *Jordan* v. *Benwood*, 42 *Id*. 312; *Childrey* v. *Huntington*, 34 *Id*. 457. But in fact Hanson has not only not adduced the record of the council, but has given us no admissible evidence at all. Therefore, we must say that this license was granted without the consent of the town of Union Mines, and is void.

Counsel for Hanson challenges equity jurisdiction. As the statute declares all houses where intoxicating liquors are sold contrary to law, common nuisances, and thus puts upon them that stamp, equity would have jurisdiction to restrain and abate them under a very old chancery jurisdiction, as I think the authorities cited by me in my opinion in the case of *Hartley* v. *Henretta*, 35 W. Va. at page 234, will show. To the numerous cases there cited for equity jurisdiction, under the general principles of equity jurisprudence, without aid from any statute, I will add 2 Am. Dec. in Eq., 352; *Ex Parte Keeler*, 55 Am. St. R. at p. 790; *Hart* v. *Mayor*, 24 Am. Dec. 165; *Carleton* v. *Rugg*, 149 Mass. 550. But however that may be since the decision of the Henretta case the statute giving equity jurisdiction above quoted has been enacted greatly changing as to jurisdiction section 18 of the Code, chapter 32. Under the new statute equity has unquestionable jurisdiction to enjoin and abate the nuisance declared by it. Counsel for Hanson says that there is a remedy at law by revocation of the license or by *certiorari* to the action of the county court; but there is nothing in this, because there is the statute pointedly conferring equity jurisdiction. Counsel also says that Devanney does not show a personal injury, that he must wait till he is damaged. But the answer is that the law in such case presumes such injury or damage as will enable the resident to maintain a suit. The law of the statute gives him that right without showing any individual injury. He acts for himself as one of the public.

Our conclusion is to reverse the decree, overrule the motion to dissolve the injunction and also the demurrer, and reinstate the injunction, and remand the cause to the circuit court.

*Reversed.*