7113

STATE *EX REL.* LYON, ATTORNEY-GENERAL, v. COLUMBIA WATER POWER CO.

1. NAVIGABLE WATER.—THE COLUMBIA CANAL both at common law and under the statute law is navigable water. That the lock at the Broad river terminus is out of repair and cannot be used; that there is now no navigation thereon except by pleasure boats and no commerce is now anticipated; that tolls were at one time charged by the State for boats passing through it do not change the character of the water, and the City of Columbia, under contract with the Columbia Electric Street Railway, Light and Power Company, has no right to obstruct the navigation of the canal by placing across it a bridge to convey a pipe through which water is to be pumped to the reservoir of the city waterworks for the use of the city.

2. IBID. — NUISANCE — EQUITY — INJUNCTION — STATE — ATTORNEY-GENERAL.—The court of equity may enjoin, at the instance of the State, placing a permanent obstruction across a navigable water, and should enjoin nuisances where the wrong is clear and the injury present and manifestly impending, especially if public property, safety, health or welfare is impaired or threatened, or the nuisance is permanent and maintained in defiance of a law expressive of the public policy of the State. The Attorney-General, representing the State, has the authority to institute the action.

3. INJUNCTION.—The restraining order is deferred in this case until the master can take evidence and report whether the order restraining building the bridge would so seriously interfere with the water supply of the city as to endanger the health of the city, and what length of time should be allowed the city to provide another method of conveying an adequate supply of water to the waterworks of the city.

Petition in the original jurisdiction of this Court by Hon. J. Fraser Lyon, Attorney-General, on behalf of the State, against the Columbia Water Power Company, the

·Columbia Electric Street Railway, Light and Power Company, and the City of Columbia, to enjoin the City of Columbia from building a bridge across the Columbia Canal.

*Attorney-General J. Fraser Lyon* and *Messrs. B. P. McMaster and James Verner,* for petitioner.

*Mr. B. L. Abney,* for Columbia Water Power Company; *Messrs. Barron & Ray,* for Columbia Electric Street Railway Light and Power Company, and *Mr. Allen J. Green,* for City of Columbia, contra.

March 4, 1909.   The opinion of the Court was delivered by

MR. JUSTICE WOODS.   The Attorney-General by his petition, filed in behalf of the State, alleging the Columbia Canal to be navigable water of the State, asked this Court to require the respondents, the Columbia Water Power Company, the Columbia Electric Street Railway, Light and Power Company, and the City of Columbia, to show cause why they should not be enjoined from continuing the construction of a bridge across the canal, and why they should not be required to move all obstructions at the entrance of the canal.   At the hearing, when the defendants had submitted their several returns to the order to show cause, the Attorney-General and counsel associated with him consented to an order discharging the Columbia Water Power Company, the return of that respondent showing it had no participation in the erection of the obstructions complained of. As to the returns of the other respondents, it was insisted on behalf of the State that they contained no denial of the substantial allegations of the complaint, and stated no facts constituting a defense.   In this state of the case, in deciding whether the defendants should be enjoined, the allegations of the petition can be taken as true only so far as they are not denied by the returns, while all allegations of the returns,

intended as a defense, are to be taken as true.   No other allegations will be regarded in the discussion.

The bridge or structure complained of is to be used for the purpose of supporting water pipes, through which water is to be pumped from the Saluda River into the reservoir, from which the city of Columbia furnishes water for its public purposes and for the private use of its inhabitants.   The bridge will be within a few inches of the water line of the canal, so that it will be impossible for boats of any kind to pass under it; and it will be a complete obstruction to the passage of boats from one end of the canal to the other.   If the canal is navigable, there can be no doubt that the construction of the bridge will effectually obstruct its navigation.   The first question to be decided then, is whether the Columbia Canal in its present condition is navigable.   The answer depends mainly on the statutes of the State, and the action taken thereunder with respect to the construction, maintenance and operation of the canal.

Passing by the general appropriations for internal improvements, made by the State from time to time, the appropriation Act of 1822 contains this provision, "on the Columbia Canal, locks, dams and works attached thereto, the sum of forty thousand dollars."   6 Stat., 201.   An Act of 20th December, 1823, relating to the management of the several canals of the State, requires the appointment of a board of commissioners for the Columbia, Saluda, and Bull Sluice Canals, and punishment for any person who "shall obstruct the navigation of any of the said canals."   6 Stat., 214.   The rate of toll for boats passing through any part of the Columbia Canal was prescribed by Act of 20th December, 1828, 6 Stat., 370, and by Act of 19th December, 1833, 6 Stat., 493.   The sum of forty thousand dollars was appropriated in 1836 for the completion of the Columbia Canal from Young's Mill to Bull's Sluice.   6 Stat., 567.   The canal was leased to F. W. Green for

twenty-one years, with authority to collect toll, by Act of
19th December, 1843; but the statute contemplates that it
shall be kept up by him for purposes of navigation.   11
Stat., 304.   By Acts of 1865, 13 Stat., 293, and of 1863,
14 Stat., 83, commissioners were authorized to sell the canal,
and one of the conditions of the sale was to be "that the
same shall be kept open and in proper order for boating
purposes (free of all charge for toll or otherwise) as far
as the same is now used."   A sale having been made and
the purchaser having failed to comply with its terms, by
Act of 14th February, 1878, 16 Stat., 360, the General
Assembly declared the title had reverted to the State.   The
Act of 12th March, 1878, 16 Stat., 444, provides for a
commission to take possession of the canal, and control and
direct its development, giving them authority to lease sites
for factories.   The design to develop the water power of the
canal for manufacturing purposes is still more prominent
in subsequent legislation.   By the Act of 8th February,
1882, 17 Stat., 855, the property was turned over to the
Board of Directors of the Penitentiary with authority to
improve and develop the water power by constructing a
dam and otherwise, but the purpose to reserve the right
of navigation is made evident by the provision that the right
of condemnation of property for improvement of the canal
is conferred "for the sake of the public improvement con-
templated in the construction of the said canal and the
better navigation of said Broad and Congaree Rivers, and
the transportation of supplies to market."

The State, on 24th December, 1887, transferred the canal
to trustees for the city of Columbia, the statute, 19 Stat.,
1090, by which the transfer was made containing these pro-
visions: Section 2. "That the said Board of Trustees are
hereby authorized and directed, for the development of the
said canal, to take into their possession the said property
with all its appurtenances; and for the purpose of naviga-
tion, for providing an adequate water power for the use

of the penitentiary and for other purposes hereinafter named, they are hereby authorized, empowered and directed to improve and develop the same.

Section 3. "That in order to improve and develop the power of the said canal for navigation, to furnish the city of Columbia with an adequate supply of water and other hydraulic purposes, they are authorized to construct a dam across Broad River, etc."

*     *     *     *     *     *     *     *

Section 5. "That the said canal shall be open for navigation free of charges by the said Board of Trustees, the State reserving the right to make such improvements in the canal as may be necessary to promote navigation through the canal more rapidly than can be accomplished by the board under this Act: *Provided,* The said Board of Trustees or lessees of the water power are indemnified against any damage arising therefrom.

Section 6. "That the said Board of Trustees are required to build only one bridge over the canal, to wit: one on Gervais street. That the said trustees or assigns shall not be required to build any draws or passageways through any other bridges across the canal, unless they voluntarily build additional bridges, and draws or passageways therein shall become necessary for purposes of navigation; and if such draws and passageways or bridges other than those above provided for should be built, they shall not be required to work the same except for their own benefit, nor shall they be required to attend on any locks which may be built." The duties of the trustees in developing the canal for navigation are again set out in the amendment of 1890, 20 Stat., 967.

On 11th January, 1892, the Board of Trustees of the Columbia Canal conveyed by deed to the Columbia Water Power Company the canal and its appurtenances, subject to all the conditions, duties, limitations and liabilities imposed by the statute under which the State turned over the property to the trustees of the canal. The Columbia Water

Power Company went into possession under this conveyance and completed the canal from its source at Bull's Sluice to the north side of Gervais street.  Afterwards, on 1st of July, 1905, the Columbia Water Power Company by its deed made a like conveyance of the property to the Columbia Electric Street Railway, Light and Power Company, subject to the same duties, conditions, limitations and liabilities.   The Columbia Electric Street Railway, Light and Power Company is now in possession of the property, and it is by virtue of a contract with that corporation that the city of Columbia is building the bridge or structure to bear across the canal the pipes through which the city intends to pump water from the Saluda River into the city reservoir.

From the foregoing statement of its legislative history, it is evident the canal was constructed by the State, and used for many years as an improvement of the navigation of two navigable streams, the Broad and Congaree Rivers, made necessary by the shoals at Columbia.  From this fact, the legal result follows that for purposes of navigation, the canal is to be regarded a part of those rivers, and, therefore, navigable, just as any other portion of them is navigable. It is true, that according to the generally accepted definition, water is navigable when in its ordinary state it forms by itself or its connection with other waters a continued highway over which commerce is or may be carried in the customary mode in which such commerce is conducted by water.   The Daniel Ball, 10 Wall., 557, 19 L. Ed., 999; The Montello, 78 U. S., 411, 20 L. Ed., 191; The Montello, 87 U. S., 430, 22 L. Ed., 393; State v. Pacific Guano Co., 22 S. C., 57; Heyward v. Farmers' Mining Co., 42 S. C., 138, 19 S. E., 963, 28 L. R. A., 42; 1 Farham on Waters, 67.   Under the definition, a stream not naturally navigable but made so by artificial means is not navigable water in a legal sense.  How long this definition will be adhered to in view of the rapid development of watercourses for navi-

gation by government agency is a matter with which we are not now concerned. It does not affect the question here involved to regard the definition strictly accurate, for the Broad and Congaree Rivers fall under the definition and are navigable streams. This being so, the authorities leave no doubt that a canal constructed to improve their navigation is navigable water. The Supreme Court of the United States held in the case of *Ex parte Boyer,* 109 U. S., 629, 27 L. Ed., 1056, the Illinois and Lake Michigan Canal, connecting the Chicago River and Lake Michigan with the Illinois River and the Mississippi River, to be navigable water though wholly artificial. The doctrine was followed and elaborated in *Perry* v. *Haines,* 191 U. S., 17, 48 L. Ed., 73, holding the Erie Canal, originally constructed to connect Lake Erie with the Hudson River, to be a navigable water of the United States. The rule is the same in England. In *Queen* v. *Betts,* 16 Q. B., 1020, 19 L. J. Q. B. L. S., 501, an artificial water course cut to straighten a navigable river was held to be navigable water. The doctrine was applied to water wholly within a State in *Weatherby* v. *Micklejohn* (Wis.), 13 N. W., 697.

It is said, however, that the canal has ceased to be navigable water, because the lock at the Broad River terminus has been so neglected that it can not now be used, and that there is now no commerce on its water. The navigability of water does not depend on its actual use for navigation, but on its capacity for such use. For, as will be seen by reference to the authorities above cited, the definition of navigable water embraces not only that which is actually used, but that which is susceptible of use for navigation in its ordinary state. It is true that where the character of the water is in doubt, the fact that the water has never been used for navigation after long settlement of the country might possibly be evidence tending to show that it was not susceptible of navigation; but it would be nothing more than evidence.

The issue would remain the same whether the water was capable of use, not whether it had been actually used.

The capacity and fitness of the canal for navigation is shown by the undisputed fact that it was actually used for many years for the transportaion of goods by boats and other water craft. The failure to keep the lock at the upper terminus in order is an impairment of the full utility of the canal for purposes of navigation, but obviously it cannot have the effect of completely destroying the public right of navigation from Gervais street to the lock. Even as it is, the canal has a public entrance at Gervais street and a public terminus at the lock on Broad River, and is capable of navigation up to the lock. The fact that the General Assembly has not seen fit to preserve its highest efficiency for navigation by keeping the lock in condition, so that portage from Broad River would be unnecessary, does not destroy the character of the canal as a navigable water. The Montello, 87 U. S., 430, 22 L. Ed., 493. Nor is the character of the canal affected by the fact that at one time, as appears by the statutes above cited, tolls were to be exacted for its use. It is well established that the improvement of a navigable stream by the construction of a canal or otherwise is a sufficient consideration to the public for the exaction of toll, and such exaction is not a violation of statutory or constitutional provision that all navigable waters shall be free. *Sands* v. *Manistee River Imp. Co.,* 123 U. S., 288, 31 L. Ed., 149; 1 Farnham on Waters, 390, where the authorities both English and American are cited. It is true the canal is unfinished, but the fact that a public highway is unfinished does not make its obstruction any the less a public nuisance. *State* v. *Lythgoe,* 6 Rich., 112.

It is strongly pressed by the respondents that this obstruction of the canal should be allowed because there is now no navigation thereon, except by pleasure boats, and no commercial use is to be anticipated. In view of the great and growing importance to the public of the diversion

of boating, there is a tendency in modern judicial thought
to hold water to be navigable which is of such character and
so situated as to be capable of general use for pleasure boat-
ing, though not useful for commercial purposes. Upon that
point, however, no expression of opinion is here necessary,
for where, as in this case, the water is shown to be navigable
for commercial purposes though not actually used for such
purposes, there can not be the least doubt that the public is as
much entitled to be protected in its use for floating pleas-
ure boats, as for any other purpose. *Attorney-General* v.
*Woods,* 108 Mass., 436, 11 Am. Rep., 380; *Lamprey* v.
*State,* 52 Minn., 181, 38 Am. St., 541; *Smart* v. *Aroostook
Lumber Co.* (Me.), 68 Atl., 527. Navigable water is a
public highway which the public is entitled to use for the
purposes of travel either for business or pleasure. The
right of the public to use such a highway is thus compre-
hensively stated in 1 Farnham on Waters, 130: "The pub-
lic is entitled to the free, uninterrupted, and unobstructed
use of every part of the stream, from bank to bank and
throughout the length of the channel, which at the ordinary
stage of the water is of such depth and of such accessibility
with respect to the current or main body of the stream as to
be capable of navigation by boats, or of valuable floatage
in connection with the main body of the stream, either up
and down or across, or from the main stream on to any
particular part in question, or thence on to the body of the
stream; and this whether such part has ever been so used,
and whether there is any present or anticipated necessity for
so using it." 3 Kent, 546.

From these considerations, disregarding the terms of the
deeds of conveyance to the respondents of the canal for the
use of its water power, and the obligations imposed by those
conveyances, the conclusion is inevitable that even under the
common law, the canal is navigable water; that the respon-
dents have no right to obstruct it; that the extent of the
public use is no defense; that the respondents can not be

allowed to say that the State can not complain, on behalf of the public, because the use of the canal for navigation is undeveloped, when the obstruction placed by them will effectually prevent the development of the use for navigation.

When the contractual obligations assumed by the respondents under the Constitution and statutes of the State are considered, these conclusions are still more manifest. The Constitution provides: "All navigable waters shall forever remain public highways free to the citizens of the State and of the United States, without tax, impost or toll imposed." Const., 1868, art. I, sec. 40; Const., 1895, art. I, sec. 28. This statement of the constitutional declaration of rights, except the imposition of toll, is hardly anything more than a constitutional sanction of the common law rights of the public in navigable water. After this provision became a part of the constitutional law of the State, the Columbia Electric Street Railway, Light and Power Company took a conveyance of the canal property from the Columbia Water Power Company, by which it bound itself to all the burdens imposed by the statute of 1887, as amended by the Act of 1890, authorizing the transfer of the canal from the Board of Directors of the Penitentiary, who held it for the State, to the trustees of the Columbia Canal. That conveyance, as already shown, imposed the obligation "that the said canal shall be opened for navigation free of charges." The respondents, therefore, have upon them not only the negative obligation imposed by the common law not to obstruct the canal, but the respondent, Columbia Electric Street Railway, Light and Power Company, expressly contracted to keep the canal open for navigation; and the city of Columbia, acting under a contract with the Columbia Electric Street Railway, Water, Light and Power Company, can have no higher right than that corporation, and cannot escape its obligations. *Ex parte Boyer,* 109 U. S., 629, 27 L. Ed., 1056.

We consider next the defense that the obstruction will be nothing more than a nuisance, and that the State has an adequate remedy at law by indictment, and, therefore, there is no ground for the intervention of a court of equity. A nuisance is anything which works hurt, inconvenience or damage; anything which essentially interferes with the enjoyment of life or property. 29 Cyc., 1152; Addison on Torts, sec. 370. Regarding the obstruction as a nuisance merely, there is no doubt of the power of the court of equity to prevent its erection or maintenance by injunction. *Attorney-General* v. *Riddock & Byrnes,* 78 S. C., 291, 58 S. E., 803. The doctrine of this case is fully sustained by authority in this country and in England. The cases sustaining it are so numerous that we cite only a few relating to different kinds of nuisances. *Mayor of Georgetown* v. *Alexandria Canal Co.,* 12 Pet., 91, 9 L. Ed., 1012, obstruction of navigable stream; *In re Debs,* 158 U. S., 564, 39 L. Ed., 1042, obstruction of mails and interstate commerce; *Carleton* v. *Rugg* (Mass.), 5 L. R. A., 193; *Devanney* v. *Hanson* (W. Va.), 53 S. E., 603; *Sand Point* v. *Doyle* (Ia), 83 Pac., 598, illegal sale of intoxicating liquors; *People* v. *St. Louis* (Ill.), 48 Am. Dec., 339, obstruction of navigable stream; *Weiss* v. *Taylor* (Ala.), 39 So., 519, obstruction of public street; *Hamilton* v. *Whitridge,* 11 Maryland, 128, 69 Am. Dec., 184, opening house of public prostitution; *Ingersoll* v. *Rousseau* (Wash.), 1 Am. & Eng. Ann. Cases, 38, note, keeping bawdy-house; *Huron* v. *Bank of Volga* (S. D.), keeping a dangerous building; *Eau Claire* v. *Matzke* (Wis.), 39 Am. St., 900, and note, obstruction of public street; note to *City of Mansfield* v. *Bristor,* 118 Am. St., 878, *et seq., Att'y-General* v. *Forbes,* 2 Mylne & Craig, 123, 40 Eng. Reprint, 587, obstruction of highway. In *Att'y-General* v. *Sheffield Gas Co.,* 19 Eng. Rul. Cases, 273, 19 Eng. L. & Eq., 639, it was held that it is within the power of a Court to enjoin a nuisance where irreparable injury is threatened to the public

or to a private individual, and the remedy at law is inadequate; but the injunction was refused in that case because the injury complained of was trivial and temporary. *Att'y-General* v. *Johnson,* 2 Wils. Ch., 87, 37 Eng. Reprint, 240, obstruction of navigation, was enjoined, and a motion to dissolve the injunction. was refused notwithstanding the pendency of indictment for the nuisance.

In *Coosaw Mining Co.* v. *South Carolina,* 144 U. S., 550, 36 L. Ed., 543, an injunction was granted against the taking of phosphate rock from a navigable stream of the State, and the additional point was decided that it was proper for the Attorney-General, as representing the public, to institute the action. The doctrine of this case is followed in *State* v. *Ohio Oil Co.* (Ind.), 49 N. E., 809, in which an injunction was granted against the waste of natural gas; in *Augusta* v. *Reynolds* (Ga.), 69 L. R. A., 564, enjoining the obstruction of a public highway; in the *State ex rel. Detienne* v. *Vandalia* (Mo.), 94 S. W., 1009, obstruction of public highway. But even if there were doubt as to the right of the Attorney-General to institute proceedings of this character under the common law, section 641 of Civil Code, in prescribing the duties of the Attorney-General, provides: "He may, when in his judgment, the interest of the State requires it, file and prosecute informations or other process against persons who intrude upon the lands, rights or property of the State, or commit or erect any nuisance thereon."

The defense that the State had an adequate remedy at law did not avail in any of the cases just cited, and it cannot avail in this case. It is manifest that there could be no way of estimating the damage to the public from the obstruction of a highway, and the respondents could not be heard to say that they should be allowed to take public or private property without authority of law upon payment of damages. The remedy by indictment is always available for the abatement of a public nuisance, but it is not exclusive nor adequate. Not being available before the nuisance

is established, it is not adequate to prevent the wrong. Indictment is not adequate for another reason. It would be unjust to require one in possession of property or in enjoyment of any right, in order to secure it against another who had invaded his property or impaired his right, or was about to invade his property or impair his right, to establish his case beyond a reasonable doubt. This would be the result if a nuisance affecting public or private property or right could be remedied only by indictment.

It is true the remedy by injunction against a mere nuisance is not a matter of absolute right, but rests on the sound discretion of the Court. In exercising discretion, the Courts consider all the circumstances. But where the wrong is clear, and the injury present and manifestly impending, the Court will rarely refuse the injunction, especially if public property, safety, health or welfare is impaired or threatened, or the nuisance is permanent and maintained in defiance of a law expressive of the public policy of the State. In this case the obstruction of the canal will not only be a permanent nuisance; it will be much more. The State, as a sovereign, holds the property right of unobstructed navigation of the navigable waters of the State in trust for the people of the State and of the United States. This is a property right of great value. It is well established that an individual has a right to injunction against threatened, repeated, or continued injury to his property rights. For a greater reason has the State, as trustee for the people, a right to the intervention of the Court to protect the valuable right of free navigation. When the right is clearly established, as it has been in this case, not only under the common law and constitutional and statute law of the State, but by the express contract of the parties themselves, the Court would be acting arbitrarily to refuse the injunction. *Coosaw Mining Co.* v. *South Carolina,* 144 U. S., 550, 36 L. Ed., 537.

13—82

The right of the State and the proposed violation by the defendants of that right, being perfectly clear, the Court cannot refuse to enforce the State's right by enjoining the defendant's proposed obstruction on the ground that the right of navigation of the Columbia Canal may be of small value in comparison with the great value to the city of Columbia of the obstruction it proposes to erect. The Court's discretion is not broad enough to permit it to refuse to protect either private or public property or rights, because the invasion of such property or the violation of such right would be of benefit to an individual or to a portion of the public. *Mason* v. *Apalache Mills,* 81 S. C., 561. Nor is it for the respondents to say the necessity for the navigation of the canal has ceased, when they have contracted to keep it open for navigation.

The State is entitled to an injunction against the construction of a bridge that will interfere with the navigation of the canal. There are, however, allegations of the return of the city of Columbia which make it necessary for the Court to have further information before framing its final order. It is alleged that the supply of wholesome water to the city of Columbia depends upon piping the water from the Saluda River across the canal to the city waterworks; that the bridge across the canal, used for this purpose before it was destroyed by the flood of 1908, stood a considerable height above the water level of the canal; and it is further alleged that the jar of pumping the water rendered the joints of the piping insecure and caused them to give way and burst; and that this strain on the pipes would be prevented by using a bridge near the water level. The return does not show that the expense of repairing the pipes was so great as to be prohibitory or that joints could not be secured strong enough to stand the strain. Mr. Chisolm, the engineer and superintendent of the waterworks, makes an affidavit, however, in which he says: "That in his professional opinion it is impossible to raise the pipes

across the canal higher than six inches above the water level; and that in order to tunnel the canal for these pipes it would be necessary to drain the canal for a period of at least three months, for which time the city would be without water supply, and the industries and public service corporations dependent upon the canal cut down and without power." The obligation rests on the Court in protecting the public right of navigation so to frame its judgment as to protect, as far as possible, the welfare and health of the city of Columbia. It is, therefore, referred to A. D. McFadden, Esq., master for Richland county, to take testimony and report his conclusions of fact on these issues: Would an order enjoing at once the destruction of the bridge described in the petition so seriously interefere with the water supply of the city of Columbia as to endanger the health of the city? In issuing the order of injunction for the protection of the free navigation of the canal, what length of time should be allowed the city of Columbia to provide another method of conveying an adequate supply of water to the waterworks of the city?

The Court cannot order the respondents to put the lock in order, because section 15 of the Act of 1887, by virtue of which the State's interest in the canal was transferred to the trustees of the Columbia Canal, expressly provided that the trustees should not be required to attend on any locks that may be built, and the Columbia Electric Street Railway, Light and Power Company assumed only the obligations imposed by that Act. Assuming, but not deciding, that the Columbia Electric Street Railway, Light and Power Company is bound under its contract to keep the lock free from obstruction to navigation, it is manifest the lock would be of no use without some one to operate it. Until the State may see fit to provide such operation, it would be useless to require the lock to be cleared of obstruction. We do not consider the allegation made in the returns that the use of the lock for navigation of the canal from the Broad River

would greatly impair the value of the large manufacturing and public service works run by the water of the canal. It is to be assumed that the General Assembly, when it provides for attendance and use of the lock, will have due regard for the interests involved in the operation of these plants.

The final order in the cause will be deferred until the report of the special master is filed.