## CHARLESTON.

### MARY VACHIKINAS v. FRANK VACHIKINAS.

Submitted May 2, 1922.   Decided May 9, 1922.

1.  DIVORCE—*Desertion Commenced in a Foreign Country, if Continued for a Requisite Period, will be Sufficient.*

    Desertion of one spouse by the other, commenced in another state or in a foreign jurisdiction, being continuous, will, if continued for the requisite period, be sufficient to enable the deserted one, if otherwise qualified by residence or citizenship, to maintain a suit in the courts of this state for divorce on the ground of desertion. (p. 183).

2.  SAME—*Residence and Domicile of One Foreign Born Are Sufficient to Give the Status of "Citizenship" Required by the Divorce Statute.*

    One who has resided and been bona fide domiciled in this

state for the requisite period, though of foreign birth and married in a foreign country, and who has never made application for or become a naturalized citizen of the United States, may maintain a suit for divorce in the circuit court of the county of his residence and domicile, nothwithstanding the provision of section 7 of chapter 64 of the Code, that in no case shall a suit for divorce be maintained unless the plaintiff is an actual bona fide citizen of this state. In such case "residence" and "domicile" are sufficient to give the status of citizenship required by the statute. (pp. 183-184).

Case Certified from Circuit Court, Marshall County.

Bill by Mary Vachikinas against Frank Vachikinas for divorce, in which the defendant was served by publication and the divorce commissioner of Marshall County interposed a demurrer, and from an order sustaining the demurrer, plaintiff appeals.

*Reversed; Demurrer overruled.*

*A. L. Hooton,* for plaintiff.
*Everett F. Moore,* for defendant.

MILLER, JUDGE:

The plaintiff's right to a divorce a vinculo as sought by her bill was challenged by demurrer interposed, not by the defendant, not served with process except by order of publication, but by the divorce commissioner of Marshall County.

The several grounds of demurrer assigned, in substance were: First, that as the bill alleges plaintiff and defendant were married in Russia, and that defendant left plaintiff there and moved to the United States and they never resided and cohabited together in this country or in this State, the desertion if any began in Russia, and not in Westmoreland County, Pennsylvania, where defendant is alleged to have moved, and where plaintiff alleged she sought to find him on her arrival in this country in 1914; and that the circuit court of Marshall County, therefore, has no jurisdiction of the case upon the theory of desertion in this country. Second, that both plaintiff and defendant being citizens and subjects of the government of Russia, and having never applied for or become naturalized citizens of the United States, nor of the

State of West Virginia, she has no right under our statute, section 7, chapter 64 of the Code, to maintain a suit for divorce in the courts of this State.

Plaintiff in her bill alleges, and the demurrer admits it to be true, that she has been an actual bona fide citizen and resident of the city of Moundsville, in Marshall County, since about the month of August 1914; that just prior to her arrival in this country defendant had been residing and working in Westmoreland County, Pennsylvania; that she went to his home there, but learned that just prior to her arrival he had left, and that she had not since then been able to learn of his location, nor had she at any time since then seen or heard of him.

Having sustained the demurrer, the circuit court, upon the joint application of the parties, has certified the correctness of its rulings to us for review as provided by statute.

Whether desertion began in Russia or in Westmoreland County, Pennsylvania, we think is quite unimportant. Besides, the bill alleges that correspondence was carried on between plaintiff and defendant after the latter's removal to the United States, and nothing is alleged showing or tending to show desertion of plaintiff in Russia. If it began in Russia, it continued, and when plaintiff sought him out in Pennsylvania, where he had a home, for the purpose of rejoining him there, and he left there and thereby intended to reject her, the desertion was continued there and thereafter. Once begun desertion continued until the conjugal relationship was re-established by residence or cohabitation, or until the contrary appears. *Burk* v. *Burk,* 21 W. Va. 445; *Bailey* v. *Bailey,* 21 Grat. 43; *Thornburg* v. *Thornburg,* 18 W. Va. 522. In Illinois it was held that in contemplation of law the residence of the wife follows that of the husband, and the desertion for the period of two years by the husband residing in that state, though commenced in a foreign jurisdiction, would enable the wife to obtain a divorce there. *Ashbaugh* v. *Ashbaugh,* 17 Ill. 476. Desertion is a continuing offense. *Payson* v. *Payson,* 34 N. H. 518; *Koch* v. *Koch,* 79 N. J. Eq. 24.

The only other question is whether both parties being

aliens, not enemies, and residing here but never having applied for or become naturalized citizens of the United States, plaintiff is entitled to sue in the courts of this State to dissolve the bonds of matrimony entered into in Russia.

Our statute calling for construction is that part of section 7 of chapter 64 of the Code, providing that: "If the marriage was not performed in the United States of America, no such suit shall be maintained unless the plaintiff is a citizens of the United States, or the cause of action arose in the United States; and in no case shall a suit for divorce be maintainable unless the plaintiff be an actual bona fide citizen of this state, and shall have resided in the state for at least one year immediately preceding the bringing of the suit."

In support of the ruling of the circuit court we are referred to section 3, article 2 of our Constitution, providing that: "All persons residing in this state, born, or naturalized in the United States, and subject to the jurisdiction thereof, shall be citizens of the state." It will be observed that this provision occurs in the article of the Constitution which relates to or defines the State, that is, the territory, and in whom the powers of government shall reside, and limiting the exercise of those powers to citizens only of the State. Of course the powers of government and the participation therein by representation or otherwise could under the Constitution be exercised only by citizens thus defined. But was it intended to exclude all others, not citizens entitled to vote and hold office, from the courts and thus deprive them, though residing in the state and county under treaty powers or otherwise, of any place to vindicate their rights of person or property? We hardly think so. In section 5 of the same article of the Constitution it is provided: "No distinction shall be made between resident aliens and citizens, as to the acquisition, tenure, disposition or descent of property." By providing who are to be regarded citizens, with the privileges of government, we do not think it was intended by the Constitution to say that other residents of the State are not to be regarded as citizens with rights not pertaining to sovereignty.

In argument considerable stress is laid upon the fact that

section 7 of chapter 64 of the Code gives jurisdiction to annul or affirm marriages at the suit of a resident, but it was contended that when it comes to suits for divorce the right of plaintiff therein is now limited to those who are native born or have been inducted into citizenship with all the rights pertaining thereto, as a member of the state. This contention is largely predicated on the fact that prior to the amendment of the statute in 1915, it did not in terms purport to limit the right to sue to an *"actual bona fide citizen of this state,* and shall have resided in the state for at least one year." Prior to the amendment residence in the state for one year was the only qualification required. Exactly what the Legislature may have intended by the amendment is not clear. But one other state, Colorado, seems to have a statute limiting right to sue to a citizen of the state. Most statutes give a resident or one domiciled in the state a right to sue for divorce, "residence" and "domicile" being synonymous in most cases. To give the statute as amended the construction given it by the circuit court would often lead to hardships, if not absurd results in the administration of the law. For example, as there is nothing in our laws prohibiting marriages between foreigners domiciled here, or between an alien and a native born citizen, if the statute should be construed as it was below, the courts would often be without jurisdiction to dissolve the marital bonds contracted and solemnized here between aliens or between an alien and a citizen and resident of this state. And the statutes of the United States, §3402 Barnes' Federal Code, provides that: "Any American woman who marries a foreigner shall take the nationality of her husband. At the termination of the marital relation she may resume her American citizenship, if abroad, by registering as an American within one year with a consul of the United States, or by returning to reside in the United States, or, if residing in the United States at the termination of the marital relation, by continuing to reside therein."

Our statute as amended was plainly aimed at procurement of divorces by fraudulent means, and against those who should seek to acquire other than bona fide residence or domicile in

this state for purposes of divorce alone, and was not intended to shut out actual bona fide residents of the State. We think the word citizen in this statute as amended should be construed to include bona fide residents domiciled in the State. In *Squilache* v. *Tidewater Coal & Coke Company,* 64 W. Va. 337, it was decided that an alien not an enemy might sue in the courts of this State to vindicate his personal rights; and in *Devancey* v. *Hanson,* 60 W. Va. 3, that persons residing in the State are presumed to be citizens thereof. In *Com.* v. *Towles,* 5 Leigh 743, it was decided that one residing in the State and domiciled there, and who was entitled to all the privileges and immunities of citizens of the State, could not be regarded otherwise than as citizens of the State for the purposes of suing or being sued.

It might be questioned whether if construed according to the holding of the circuit court the statute might not run counter to the provision of the fourteenth amendment to the federal constitution, prohibiting a state from making or enforcing any law which would deny to any person within its jurisdiction the equal protection of its laws. But as we construe the statute it is not repugnant to the federal law. This provision of the constitution was intended to open the courts of a state to any one within its jurisdiction, and upon the same terms to vindicate his rights and redress his wrongs. *Ex parte Virginia,* 100 U. S. 339; *Barbier* v. *Connolly,* 113 U. S. 27; *Pocahontas Collieries Company* v. *Rukas,* 104 Va. 278.

As already noted, the Colorado statute, like our own, uses the words "bona fide resident and citizen," but it was there held that the statute did not preclude an unnaturalized plaintiff of foreign birth from suing for divorce in that state if he has come into the state in good faith and for the purpose of making it his home, and had there resided for the required time. *Cairnes* v. *Cairnes,* 29 Colo. 260; *Sedgwick* v. *Sedgwick,* 50 Colo. 164. In accordance with these decisions we find *Hamill* v. *Talbott,* 81 Mo. App. 210, 216, saying: "In divorce statutes we think the terms 'resident' or 'residence' are equivalent in meaning to that of 'citizen' or 'domicile.'"

For the foregoing reasons we are of opinion to reverse the

order of the circuit court sustaining the demurrer, and to re-certify the cause for further proceedings to be had therein in accordance herewith.

*Reversed; Demurrer overruled.*