Hart, J.
Section 4003-20, General Code (Section 3349.22, Revised Code), provides:
“Citizens of such municipalities [in which municipal universities are located] shall not be charged for instruction in the academic department, except in professional courses therein. Such board of directors may charge fees for any purpose to students in other departments and to students in professional courses in the academic department, and may charge fees for purposes other than instruction to students in the academic department. From time to time they may make such university, college or institution free in any or all of its departments to citizens of the county in which it is located.
‘ ‘ The board of directors may receive other students on such terms as to tuition or otherwise as they see fit.”
The plaintiff contends that the phrase, “citizens of such municipalities,” as used in the statute, is intended to mean and apply to bona fide residents legally domiciled in the city wherein the university is located, and that such residents so domiciled are entitled to free tuition in the academic departments of any university of such city on the same basis as other persons so domiciled, regardless of United States citizenship. However, the defendant contends that United States citizenship is a prerequisite to municipal citizenship *293 and has, accordingly, required the payment of tuition fees by the plaintiff as necessary to his admission to the university.
The sole question for determination by this court is the meaning of the phrase, “citizens of sucn municipalities,” as used in Section 4003-20, General Code.
Both parties, as well as the Common Pleas Court and the Court of Appeals, recognized that the term, “citizen,” as applied to municipalities, townships, and counties, is technically a misnomer. Citizenship applies ordinarily to one’s relationship to a national government and a state of domicile within such government.
Section 1 of the Fourteenth Amendment to the Constitution of the United States defines citizenship as follows:
“All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside.”
It is apparent, however, from a study of legislation and court decisions, that, except where a citizen of the United States is referred to, a variety of meanings is loosely given to the term, “citizen,” and that such use creates legal ambiguity. It is to be observed that the term, “citizen,” is often used in legislation where “domicile” is meant and where United States citizenship has no reasonable relationship to the subject matter and purpose of the legislation in question.
For instance, the court in the case of Smith v. Birmingham Waterworks Co., 104 Ala., 315, 16 So., 123, construed the term, “citizen,” as used in an ordinance fixing rates to be charged to the “citizens of Birmingham, ’ ’ as applicable to all inhabitants of the city.
In the case of Vachikinas v. Vachikinas, 91 W. Va., 181, 112 S. E., 316, the court held that “one who has resided and been bona fide domiciled in this state for *294 the requisite period, though of foreign birth and married in a foreign country, and who has never made application for or become a naturalized citizen of the United States, may maintain a suit for divorce in the Circuit Court of the county of his residence and domicile, notwithstanding the provision of Section 7 of Chapter 64 of the Code, that in no case shall a suit for divorce be maintained unless the plaintiff is an actual bona fide citizen of this state. In such case, ‘residence’ and ‘domicile’ are sufficient to give the status of citizenship required by the statute.” See Devanney v. Hanson, 60 W. Va., 3, 53 S. E., 603.
In the case of McKenzie v. Murphy, 24 Ark., 155, the court held that an alien domiciled in that state and being a householder or head of the family is entitled to the exemption of his homestead from sale on execution, a privilege granted by statute to citizens of the state; that, unless the terms of the statute are entirely free from ambiguity, regard must be had to its known object, to the mischief intended to be provided against and to its general spirit and intent; and that the word, citizen, is often used as meaning only an inhabitant or a resident of a town, state or county, without any implication of political or civil privileges.
In the case of Field v. Adreon, 7 Md., 209, the court, in construing an attachment statute as applied to “absconding citizens,” held that an unnaturalized person, residing and doing business in the state of Maryland, is, for commercial objects and in contemplation of the attachment laws, a citizen of the state and liable to be proceeded against as an absconding debtor.
This court in the early days of its existence had occasion to consider a similar question then before it. In the case of State, ex rel. Owens, v. Trustees of Section 29, 11 Ohio, 24, the court was called upon to construe Section 13 of the Act of the General Assembly of March 14, 1831, entitled, “To Incorporate the Original *295 Surveyed Townships,” in the light of the provisions of Section 26 of Article VIII of the Ohio Constitution then in force. ' The Constitution provided that “laws shall be passed by the Legislature which shall secure to each and every denomination of religious societies in each surveyed township, which now is, or may be hereafter formed in the state, an equal participation, according to their number of adherents, of the profits arising from the land granted by Congress for the support of religion, agreeable to the ordinance or act of Congress making the appropriation.”
The legislative enactment under that constitutional provision, as above designated, provided that “each and every denomination of religious societies, after giving themselves a name, shall appoint an agent who shall produce to the trustees a certificate containing a list of their names and numbers, specifying that they aíre citizens of said township; and the agent shall pay over an equal dividend of the rents within three months after they shall have been received, to be appropriated to the support of religion, at the discretion of each society.”
That case was an action in mandamus to compel the defendants to pay over to a church of Delhi Township an equal dividend of the rents of section 29 in the township in proportion to the members of the church who were ‘ ‘ citizens ’ ’ of the township.
Judge Peter Hitchcock, a most able and honored member of this court, in the course of the opinion, said: . .
“Here a question is raised as to the meaning of the word “citizens,” as used in this connection. That this word does not always mean one and the same thing is clear. Thus, we speak of a person as a citizen of a particular place, when' we mean nothing more by it than that he is a resident of that place. When we speak of a citizen of the United States, we mean one *296 who was born within the limits of, or who has been naturalized by, the laws of the United States. It can hardly be believed that the Legislature, in using the word ‘citizen,’ in this statute, intended to make a distinction between native or naturalized citizens, and resident aliens. Why should such distinction be made? Is there not as much need of religious instruction in the one case as the other? To me it seems clear that the word citizen, as here used, should be held to be synonymous with the word resident. The Legislature did intend that, in ascertaining numbers, none but such as were residents of the township should be included. But if there is any doubt upon the subject, that doubt must be removed upon reference to the Constitution. We are bound so to construe every law, if possible, that it shall not conflict with the Constitution.
“If it can not be so construed, then it must be rejected, for a legislative act which is in violation of the Constitution can be of no binding force. The provision of the Constitution, as already cited, is, that laws shall be passed, securing to each and every denomination of religious societies ‘an equal participation, according to their number of adherents, of the profits arising’ from these lands. If a person who is not a citizen can be an adherent of a religious society, this section of the Constitution has secured to him a participation in the profits of these lands. It is clear, then, that this law is not such as is required by the Constitution, unless we hold the word citizen, as here used, to mean the same as resident.”
The decision of the court in that case is persuasive authority in the determination of the issues in the instant case, since in that case, as here, there was involved a privilege or gratuity as to which the plaintiff was seeking to qualify as a “citizen,” although under a strict construction he was a mere resident.
That case adds weight in an interpretation of the *297 meaning of the term, “citizens of the township,” in view of the subsequent action of the General Assembly with reference to the specific legislation then before the Supreme Court in that case. The original act was passed in 1831. The Owens case was decided in 1841, and on March 11, 1843 (41 Ohio Laws, 62), the following was enacted:
“Section 1. Be it enacted by the General Assembly of the State of Ohio, that it is the true intent and meaning of the said thirteenth section, that each and every denomination of religious societies, after having given themselves a name, shall appoint an agent, who shall produce to the trustees a certificate, containing a list of the names, and number, of all persons, over fifteen years of age, who belong to such religious societies, as members, and are citizens of such township.”
It is significant that, in view of the discussion of the question and the decision of the court as to the meaning of the term, ‘ ‘ citizens of such township, ’ ’ the General Assembly in the corrective legislation continued to use the term, “citizens of such township,” thereby necessarily adopting the court’s definition of the term in question.
Other acts of the General Assembly show that it was careful to designate “citizenship of the United States” when it intended to include that category in reference to any specific act. For example, in Section 4785-29, General Code (Section 3503.01, Bevised Code), it is provided that every citizen of the United States who is of the age of 21 years or over and who has been a resident of the state for one year shall have the right to vote; in Section 8623-4, General Code (Section 1701.06, Bevised Code), it is provided that any number of natural persons, not less than three, a majority of whom are citizens of the United States, may form a corporation; in Section 6064-17, General Code (Sec *298 tioñ 4303.29, Revised Code), which places restrictions on the issuance of liquor permits, it is provided that the holders of all but two classes of permits shall be citizens of the United States; and in Section 1706, General Code, it is provided that no person not a citizen of the United States shall practice law, but that a resident alien who applies for citizenship shall have the status of a citizen. It is clear in these instances that resident aliens are forbidden the enjoyment of these rights.
The University of Cincinnati is a public institution organized for the purpose of rendering a public service to the residents of the city of Cincinnati. It is supported in part by public taxation and in this respect stands in the same category as the city’s water service, garbage-collection service, fire-department service, and its public-school service. For the support of these services, even though they be aliens, the parents of the plaintiff are required, and if plaintiff were a property owner he would be required, to pay property taxes in the same manner as other residents of the city. In these respects alien residents are entitled to the same privileges as are other residents of the city.
In the opinion of this court, the fact that the plaintiff, as well as other residents of the city, must be a citizen of the municipality in order to qualify, for free tuition to the academic department of the university can not disqualify him because he is not a citizen of the United States.
The judgment of the Court of Appeals is reversed and that of the Common Pleas Court affirmed.

Judgment reversed.

Middleton, Taft, Zimmerman, Stewart and Lamneotc, JJ., concur.