# CHARLESTON.

## STATE *v.* ROSS.

Submitted September 7, 1911.   Decided March 26, 1912.

1. INTOXICATING LIQUORS—*Licenses—Assignments—Statutory Provisions.*

   No assignment of a druggist's license will protect the assignee thereof in making sale of spirituous liquors, unless first assented to on proper application by the tribunal, county court or municipal authorities, authorized to grant the original license, as provided by section 37, chapter 32, Code 1906, and other provisions of said chapter pertaining thereto. These statutes are mandatory and strict compliance therewith is required. (p. 551).

2. SAME—*Licenses—Assignments.*

   An endorsement of a transfer on a druggist license previously granted by a county court, by the clerk thereof, without previous authority of such court lawfully given, is void; and the subsequent grant and confirmation of such transfer by such court, though regularly and lawfully done on proper application, will have no retroactive effect to protect the assignee of such license against the consequences of his prior unlawful act in making sale of spirituous liquors. (p. 553).

3.   SAME—*Offenses—Sales by Druggists.*

    Neither a druggist, nor registered pharmacist, not a licensed druggist, can under the laws of this state, lawfully sell spirituous liquors, even upon the prescription of a physician, without a state license therefor, as required by section 1 of chapter 32, Code 1906.   (p. 555).

4.   SAME—*Criminal Prosecution—Admissibility of Evidence—Intent.*

    When by statute, as in this state, an act is made an offense under the liquor laws without regard to the intent with which it is done, evidence on the subject of intent is not material, and on the trial of one charged with a violation of such statute, there is no error in rejecting such evidence, or instructions to the jury thereon.   (p. 557).

Error to Circuit Court, Braxton County.

R. M. Ross was convicted of unlawfully selling liquor without a license, and brings error.

*Affirmed.*

*Hall Bros.,* for plaintiff in error.

*William G. Conley,* Attorney General, for the State.

MILLER, JUDGE:

The indictment, in the usual form, charged defendant with unlawful selling at retail spirituous liquors, etc., without a state license therefore, as required by law.   The indictment is good and the motion to quash was properly overruled.

On a verdict of guilty there was a judgment of fine and imprisonment, to which defendant is prosecuting this writ of error.

All points fairly raised on the trial and presented and argued here are substantially comprehended in the points adjudicated. Some points are immaterial, or do not fairly arise, and will not be further noticed.

The defenses sought to be interposed are, a sale (1) as a licensed druggist;   (2)   as a druggist or registered pharmacist, without license, upon the written prescription of a practicing physician in good standing in his profession, and not of intemperate habits, it being claimed that a sale in either capacity on such a prescription with or without a druggist's license constitutes· no offense;   (3)   that though the business was being conducted in his name defendant did not in fact own the drug

store, but was the mere agent or clerk of S. R. Martin, with whom he had had negotiations for the purchase thereof; (4) the absence of intent to commit an offense, shown particularly by the proposed evidence of an attempt at least to comply with the law, and (5) that being a druggist, but not indicted as such, defendant cannot be punished on an indictment for unlawful retailing.

To establish the first defense, defendant relied on proof of a druggist's license, originally issued to J. A. Martin, April 21, 1908, for the term beginning May 1, 1908, to June 30, 1909, assigned to S. R. Martin, September 17, 1908, and on to defendant October 5, 1908. The license itself was not produced. Defendant claimed he had lost it. But he was permitted to prove by the clerk of the county court, and the records, that such a license had in fact been issued, and that the index to the register of licenses, and transfers of licenses, showed the transfers referred to and that the clerk had endorsed on the license in question substantially as follows: "State of West Virginia, Braxton County, to-wit: I, E. W. Hefner, Clerk of the County Court of the County and State aforesaid hereby transfer the foregoing license to S. R. Martin, and on to R. M. Ross." Defendant then offered, but was not permitted to prove by the same witness, an order of the County Court made May 27, 1909, as follows: "The Court doth grant and confirm the following drug license transfers: J. A. Martin, Sutton, W. Va., to S. R. Martin, Sutton, W. Va., S. R. Martin, Sutton, W. Va., to R. M. Ross, Sutton, W. Va., R. M. Ross, Sutton, W. Va., to S. R. Martin, Sutton, W. Va." And finally, in connection with its action in refusing to admit these records, the court also on motion of the State excluded all the evidence of the witness relating thereto.

Section 37, chapter 32, Code 1906, authorizes assignment of licenses, "with the assent of the tribunal or tribunals which authorized such license," but provides that, "such tribunal or tribunals shall cause a memorandum of such assignment to be endorsed on the original license by the clerk of the county court, or if such place be within an incorporated city, town or village, the municipal authorities whereof are vested with the sole power to grant licenses therein, then by the clerk of the

municipality, who shall immediately make report thereof in writing to the clerk of the county court, who shall thereupon make record thereof." A further provision of said section is: "But no assignment of a license shall be of any effect unless made in the manner prescribed in this section. And no transfer of a license mentioned in paragraphs b, c, d, e and f of the first section shall be authorized except upon petition of the proposed assignee, setting forth all the essential facts as required in an original application for such license, and in compliance with all other requirements of the law in relation thereto. Nor until there be filed with such petition a receipt from the proper officer showing the payment of the tax of fifty dollars upon such transfer hereinafter provided for."

It is contended by the attorney general that strict compliance with this statute is required, and that as there was no petition presented, and no action of the county court thereon assenting to the transfer of said license, the action of the clerk and of the court, proposed to be shown in evidence, was wholly void and furnished no protection to defendant.

The first section of said chapter 32 provides: "No person without a state license therefor shall * * * * (f) carry on the business of a druggist." We do not understand, however, that to obtain a license as druggist the applicant is required to present a formal petition, as by section 12 of said chapter he must do to obtain a license "for any of the purposes mentioned in paragraphs b, c or e" thereof. No statute specifically requires such formal petition. The only provision applying to a druggist license is section 11 of said chapter. It says: "Every person desiring to obtain a state license shall apply for a certificate therefor to the clerk of the county court, except as hereinafter provided. The words 'clerk of the county court' as used in this chapter shall in each instance be construed to mean the clerk of the county court who acts as the recorder of said county." By the subsequent sections such formal petitions are required only in cases covered by paragraphs b, c, and e. They constitute, for the most part, the exceptions referred to in section 11. The language of section 37, above quoted, may seem to imply that application by petition applies also to a druggist license; but observe that that section says, "setting forth all the essential

facts as required in an original application for such license."
While section 16 of said chapter clearly implies with respect to a
druggist license, as does section 15 with respect to a hotel
license, and a license to keep a bowling alley, covered by para-
graphs a and g, that the county court, or in lieu thereof in cer-
tain cases, the municipal authorities, and not the clerk, shall
grant the original license, and assent to any assignment or trans-
fer thereof, yet no formal petition is required. Said section 16,
so far as applicable, reads: "When the county court or license
court shall have granted a license for any of the purposes men-
tioned in paragraphs b, c, d, e or f of said first section, as pro-
vided herein, the clerk of the county court shall issue a certifi-
cate of license in the form to be prescribed by the state tax com-
missioner." Doubtless, for convenience and accuracy, the
application to the clerk should be in writing, giving the name
and place of business of the applicant, and request or pray for
the license desired, and of course there could be no objection to
such application being in the form of a petition, but a formal
petition is certainly not required.

Another provision of the statute showing the irregularity, if
not invalidity, of the alleged assignment or transfer of the Mar-
tin license is section 19 of said chapter 32, as follows: "No
license for any purpose mentioned in the first section shall be
granted unless the tribunal granting the same shall be satisfied,
and so enter upon its record, journal or minutes, that the appli-
cant for such license is not of intemperate habits, and has not
been convicted of a felony, or who shall be convicted hereafter of
selling intoxicating liquors on Sunday." Section 20 of the same
chapter also says: "The granting of a license to any person to
carry on any business for which a license is required, under any
of the provisions of this chapter, shall not be construed to
authorize him to carry on said business, unless he shall have
complied with all the provisions of law requiring him to make
any payment, obtain any certificate or permit, or to do any act
as a condition of carrying on any such business."

Though we have concluded that no formal petition to obtain
the assent of the county court to the assignment of a druggist's
license is necessary, we are clearly of opinion that the several
provisions of the statute quoted relating thereto, properly con-

strued, require, as a condition precedent to any valid assignment or transfer thereof, the prior application to the clerk and the assent of the county court, or other tribunal having authority, thereto, in the same manner as required to obtain an original license, and that until such authority and assent has been so obtained the clerk is without authority to endorse on the original ·license assent thereto.

In the case at bar no evidence was introduced or proposed showing or tending to show compliance with the law. By the very language of said section 37 of chapter 32, "No assignment of a license shall be of any effect unless made in the manner prescribed in this section," that is as upon application for an original license. No order was shown or offered to be shown evidencing compliance with the provisions of said section 19. Compliance with this statute was a pre-requisite condition to any valid assent to such assignment. And by section 20, neither the granting of an original license, nor assent to an assignment thereof can be construed to authorize the licensee to carry on the business "unless he shall have complied with all the provisions of law requiring him to make any payment, obtain any certificate or permit, or do any act as a condition of carrying on any such business." The subsequent act of the county court·in attempting to "grant and confirm" said transfer, could not protect a prior sale by defendant; besides that order was probably void for non-compliance with said section 19.

These statutes would seem to be conclusive of the correctness of the rulings of the court below in rejecting the records of the assignments and transfers of said license, and the action of the county court thereon, as well as the evidence of the clerk in relation thereto. That these statutes are mandatory and strict compliance therewith required has been affirmed by this court in prior decisions. *Devanney* v. *Hanson,* 60 W. Va. 3; *State* v. *Moore,* 67 W. Va. 559; *State* v. *Hotel McCreery Co.,* 68 W. Va. 131. See, also, 17 Am. & Eng. Ency. Law, (2nd Ed.) 331, 245.

The clerk having been without authority, therefore, his transfer or consent to the transfers of the license issued to Martin furnished defendant no protection. The authority and discretion was not his but that of the county court. Joyce

on Intox. Liq., section 280; 1 Woollen & Thornton Intox. Liq., section 412. His transfer was therefore absolutely void. *Thorn* v. *City of Atlanta,* 77 Ga. 661. Nor, if the subsequent act of the county court in attempting to "grant and confirm" said transfer had been otherwise valid would it have had any retro- active effect so as to relieve defendant of his previous unlawful act. Joyce on Intox. Liq., section 289.

But does proof of a sale by a druggist or registered pharma- cist, not a licensed druggist, on the prescription of such a phy- sician constitute a good defense to an indictment for unlawful selling? This question is raised by exceptions to the rulings of the court on the evidence, and on instructions to the jury given and refused. Our answer to the proposition is in the negative. In support of their contention defendant's counsel rely mainly on the particular language of section 5 of said chapter 32. That language is: "If any druggist shall sell" &c., not saying *"licensed* druggist." They argue, first, by reference to defini- tions given by lexicographers, and in judicial decisions, that one may be a druggist though not a licensed druggist. This may all be true enough, but the chapter in question is dealing with the subject of licenses and license taxes, and to be a druggist within the meaning of that section one must be a licensed druggist. The language of this section presupposes that the druggist has obtained license to carry on the business of a druggist, as required by that chapter, otherwise he would be conducting his business unlawfully, and would not be protected in making sales of spirituous liquors, without the state license required by section 1. As used in prior, and subsequent sections the word "druggist" means necessarily a licensed druggist, and as argued by the attorney general, quoting 2 Lewis Suth. Stat. Const., section 399, "A word or phrase repeated in a statute will bear the same meaning throughout the statute unless a different intention appears." Under the statute only a licensed druggist can sell on the prescription of a physician. In *State* v. *Denoon,* 34 W. Va. 139, 141, this Court said, not by way of *obiter,* as defendant's counsel argue, but in actually deciding the point there as it is here presented: "The defendant here was not indicted as a druggist, and he offered no proof that he was a licensed druggist. In the absence of such proof it was wholly

immaterial that he sold the whisky to Goodwin on a proper prescription, because under the statute no one but a licensed druggist is authorized to sell upon a prescription."

Nor does the fact that defendant, as he proposed but was not permitted to prove, was a registered pharmacist, affect the question of his guilt. Section 29b I, chapter 150, Code 1906, the chapter relied on, says: "It shall be unlawful for any person not a registered pharmacist, or who does not employ as his salesman a registered pharmacist, within the meaning of this act, to conduct any pharmacy, *drug store,* apothecary shop or store for the purpose of retailing, compounding or dispensing medicines or poisons for medical use, except as hereinafter provided."

The proposition of defendant's counsel, based on this statute, is that a registered pharmacist, carrying on the business of a druggist, without a druggist's license, may sell upon prescription of a physician, without violating the law. We can not accede to this proposition. The word "druggist" and "pharmacist," as used in our statutes, are not synonymous or used interchangeably, as argued, or in any such way as to protect a registered pharmacist carrying on the business of a druggist from the consequences of his act in selling spirituous liquors, even on prescription, without a druggist license. The letter as well as spirit of our laws are plainly opposed to any such construction. Pharmacists and druggists, so far as registering and licensing them, are dealt with in separate and distinct chapters. For instance, observe the language of section 29b IX, of said chapter 150: "Nothing in this act contained shall be construed so as to protect any druggist or registered pharmacist from any penalty or forfeiture prescribed in any other law regulating the sale of alcoholic or other intoxicating liquors; * * * * Nor shall this act be construed to authorize any person to carry on the business of a druggist without first having obtained a license therefor." Now while defendant undertook to show that he was a registered pharmacist, he also proposed to show that by assignment he was a licensed druggist. He was in fact carrying on the business of a druggist, under an invalid and void assignment of a license, which did not protect him. Having failed to prove himself a duly licensed druggist, therefore, evidence that he was

a registered pharmacist was not improperly rejected. It would not have excused his offense.

The third defense based on the theory that defendant did not in fact own the drug store, and was not in fact carrying on the business of a druggist, rests solely on his own evidence. He admits he was in possession, that the business was being run in his name, that the licenses had been assigned to him, and he substantially admits that the sale in question was made by him. His pretention, without going into details, is that he had not completed his purchase. Other witnesses gave evidence of contrary declarations by him. The jury were the judges of the facts, and we must interpret their verdict as a finding against defendant on this issue, if it was material.

Next, as to the defense of want of intent to commit the offense. The general rule is that one intends that which he does, and that ignorance of the law excuses no one. The evidence rejected did show some attempt to comply with the law respecting the assignment and transfer of the druggist license. We may fairly assume that application was made to the clerk, and the evidence offered, but rejected, tended to show an assignment by the licensee and the endorsement on the license by the clerk assenting thereto; but as we have seen the action of the clerk was invalid and void, and the subsequent action of the court, if regular and valid, would have had no retroactive effect. The evidence offered, but rejected, shows, we think, that the action on the assignment by the municipal authorities of the Town of Sutton, was regular and valid. That record even shows compliance with the statute requiring a previous order showing that the applicant was not of intemperate habits and had not been convicted of felony. Not so with respect to the action of the county court and its clerk. As we have shown their actions were wholly void. "Where by statute," as in this state, "an act is made an offence under the liquor laws without regard to the intent with which it is done, evidence of intent is not material." Joyce on Intox. Liq., sec. 680; *White* v. *Com.*, 78 Va. 484, 487. There was no error therefore in rejecting the evidence and instructions offered by defendant on this subject.

Lastly, was defendant, not a licensed druggist, indictable and subject to punishment for selling in violation of section 1 of

said chapter 32? We answer in the affirmative, upon the authority of *State* v. *Cox,* 23 W. Va. 797, and *State* v. *Denoon,* 34 W. Va. 139. As we have already held a druggist is not protected in making sales of spirituous liquors, even upon the prescription of a physician, unless he be a licensed druggist. Unless he has a license as druggist, his sales though upon prescription are as unlawful as a sale by any one else without a license would be. This construction of our statute seems to us not only sound law, but good sense as well.

We regret the necessity of affirming the judgment, but we see no escape from it. We are rather persuaded from the record that defendant made an honest effort to comply with the law; if he did he did not succeed in doing so. Having failed the judgment of the law must fall upon him. If entitled to relief he must find it in executive clemency. Judgment affirmed.

*Affirmed.*