1575

Lindberg HUGHES, Respondent v. Anthony NELSON, Appellant.

(399 S.E. (2d) 24)

Court of Appeals

*Doris M. McAndrew,* of *Strickland & McAndrew,* Columbia, *for appellant.*

*Charles H. Williams,* of *Williams & Williams,* Orangeburg, *for respondent.*

Submitted Nov. 5, 1990.

Decided Nov. 26, 1990.

SANDERS, Chief Judge:

Respondent Lindberg Hughes brought this action, alleging appellant Anthony Nelson had blocked his access to the Edisto River by obstructing a certain canal. After a trial, the Circuit Court found "the canal constitutes navigable waters." Based on this finding, the Court ordered Mr. Nelson to remove all obstructions previously placed in the canal and enjoined him from further obstructing the canal or "blocking access." We affirm.

There is no dispute about the fact that Mr. Nelson obstructed the canal. Nor is there any doubt that the unautho-

rized obstruction of navigable waters is unlawful. *See* S.C. Const. art. XIV, § 4 ("All navigable waters shall forever remain public highways free to the citizens of the State and the United States. . . ."); *State ex rel. Lyon v. Columbia Water Power Co.*, 82 S.C. 181, 190, 63 S.E. 884, 889 (1909) (the public is entitled to the unobstructed use of navigable streams and the statement of the right in the Constitution "is hardly anything more than a constitutional sanction of the common-law rights of the public in navigable water"). Thus, the only issue presented in this case is whether the waters of the canal are navigable waters, making the canal a public highway, or whether, on the other hand, the canal is private property, like a privately owned road.

Mr. Hughes dug the canal in 1972. His purpose was "to get to the river to fish, or whatever." The project was no small undertaking. The canal, at the point where it connects with the river, was about 30 feet wide and 20 feet deep. It ran back from the river about 1,700 feet. At its far end, away from the river, it was about 15 feet wide and 12 feet deep. It turned out to be a very good place to fish for red breast, as well as for catfish, bass and bream. Mr. Hughes thereafter sold his property adjoining the canal, but he retained "fishing rights in, and the use of the canal." From time to time, he and others have tried to prevent people from using the canal by installing a gate at its mouth, by stringing a wire across the mouth, and by putting up no trespassing signs. At certain times of the year, the canal has very little water in it, making access to it difficult. Nevertheless, there is no dispute about the fact that, except for a brief period of time, members of the public have used the canal for fishing, gaining access by piloting their boats into it from the river. The Circuit Court made the explicit finding that "since the construction of the canal, the public fishing on [the] Edisto River in boats have fished in this canal and driven their boats in this canal, except for a very brief period of time when the plaintiff attempted to block its usage." The finding of the Court is unchallenged by any exception. *See Walters v. Canal Ins. Co.*, 294 S.C. 150, 151, 363 S.E. (2d) 120, 121 (Ct. App. 1987) ("Where no exception is taken to findings of fact or conclusions of law, they become the 'law of the case.' ").

## I.

To be navigable, a waterway does not have to embrace commercial shipping lanes. It need not accommodate the Carnival Cruise Lines or be able to float the Love Boat. "The true test to be applied is whether a stream inherently and by its nature has the capacity for valuable floatage, irrespective of the fact of actual use or the extent of such use." *State ex rel. Medlock v. South Carolina Coastal Council*, 289 S.C. 445, 449, 346 S.E. (2d) 716, 719 (1986) (emphasis omitted). The fact that a waterway is artificial, not natural, is not controlling. When a canal is constructed to connect with a navigable river, the canal may be regarded as a part of the river. *See id.* at 448, 346 S.E. (2d) at 718 (canals and ditches, dug by rice planters for the purpose of water control but since used by the general public as natural waterways, "have become the functional equivalent of natural streams"); *State v. Columbia Water*, 82 S.C. at 186, 63 S.E. at 887 (a canal constructed to improve navigation of two navigable rivers becomes "a part of those rivers, and therefore navigable just as any other portion of them is navigable").[1]

Quite obviously, the waters of the canal in question have the capacity for navigation. Members of the general public have, in fact, navigated them for more than fifteen years. The fact that the use made of the waterway was not a commercial use is of no consequence. "[A] traveler for pleasure is as fully entitled to protection in using a public way, whether by land or water, as a traveler for business." *Heyward v. Farmers' Min. Co.*, 42 S.C. 138, 155, 19 S.E. 963, 972 (1894); *see State v. Coastal Council*, 289 S.C. at 450, 346 S.E. (2d) at 719 ("The use of this waterway by the general public for boating, hunting, and fishing is a legitimate and beneficial public use."). It would, indeed, be difficult to imagine a more valuable floatage than a fishing boat on the Edisto River. The deathless prose of Herbert Hoover leaps to mind:

> The blessings of fishing include not only Edgar Guest's "wash of the soul" with pure air, but they also now include discipline in the equality of men, meekness and in-

---

[1] The rule appears to be the same in England. *See The Queen v. Betts*, 117 Eng. Rep. 1172, 16 Q.B. 1022 (1850) (an artificial waterway cut to straighten a navigable river is navigable water).

spiration before the works of nature, charity and patience toward tackle makers and the fish, a mockery of profits and conceits, a quieting of hate and a hushing to ambition, a rejoicing and gladness that you do not have to decide a blanked thing until next week.

H. Hoover, *The Memoirs of Herbert Hoover: The Cabinet and the Presidency, 1920-1933* 158 (1952);[2] *see* E. Guest, "Out Fishin'," reprinted in *Poems That Live Forever* 419 (1965) ("An' he can wash his soul in air / That isn't foul with selfish care, / An' relish plain and simple fare, / Out fishin'."); *cf. Ahrens v. McDaniel*, 287 S.C. 63, 67-68, 336 S.E. (2d) 505, 508 (Ct. App. 1985) (quoting Sir Izaak Walton on the benefits of fishing: "[I]t will prove to be, like virtue, a reward to itself.").

## II.

Mr. Nelson argues that the waters of the canal are not navigable because "the canal cannot sustain boat traffic or be fished for certain periods during the year because of insufficient depth." We reject this argument. The test of navigability is not whether a waterway is accessible at all times. Rather, the test is whether it is accessible "at the ordinary stage of the water." *State v. Columbia Water*, 82 S.C. at 189, 63 S.E. at 888.

Mr. Nelson further argues that the canal is private property and that the Circuit Court ignored "the indicia of private ownership." In support of his argument, he cites an opinion of the Attorney General that "a canal built entirely on private property, with private funds and for private purposes, is a private thing, for the same reasons that a road built on private property for private purposes is a privately owned road." 1986 Op. Att'y Gen. 303, 304. Assuming, without deciding, that the opinion is correct, it is inapplicable here. The opinion is conditioned on the fact that the canal, un-

---

[2] The foregoing is extracted from the inaugural address of President Hoover, not upon being inaugurated as President of the United States but, rather, when he acceded to what he referred to as "the eminent position of President of the Izaak Walton League." H. Hoover, *The Memoirs of Herbert Hoover: The Cabinet and the Presidency, 1920-1933* 156 (1952).

like the canal in the instant case, is a waterway from which the public had been "continuously and consistently excluded." *Id.* at 303.

Mr. Nelson finally argues that the waters of the canal should not be regarded as navigable because a Permit Administrator, employed by the South Carolina Water Resources Commission, determined that no permit was required for construction in the waterway because it was not navigable waters. The Permit Administrator testified that his determination was made based on several things. He testified he saw a gate at the mouth of the canal, "which would show indication of prohibiting public access from the river." He conceded, however, that the gate was open when he saw it. He apparently made no inquiry regarding public access, so he never learned the extent to which the public had used the canal. The main reason for his determination appeared to be the fact that the canal was less than twenty years old. He testified that "a man-made channel, to be public navigable waters, has to be at least twenty years of age." No such limitation exists, as a matter of law, on the constitutional and common law right of the public to the unobstructed use of waters which are, in fact, navigable. Governmental agencies, like the Water Resources Commission, are entrusted with the duty of safeguarding the rights of the public, but the Courts, not the bureaucracy, have the last word in defining those rights. *See State v. Coastal Council*, 289 S.C. 445, 346 S.E. (2d) 716 (overruling the decision of the South Carolina Coastal Council allowing the obstruction of navigable waterways).

For these reasons, the order of the Circuit Court is

Affirmed.

GOOLSBY, J., and LITTLEJOHN, Acting Associate Justice, concur.