498 S.E.2d 389

**The STATE of South Carolina, Appellant,**

v.

**Singletary M. HEAD, Respondent.**

**No. 2732.**

Court of Appeals of South Carolina.

Heard Sept. 9, 1997.

Decided Oct. 6, 1997.

Refiled Dec. 19, 1997.

Assistant Solicitor Lake E. Summers, Lexington, for appellant.

Randall M. Eason, of McMehan & Associates, Lancaster, for respondent.

## ORDER

PER CURIAM:

The state has petitioned for a rehearing and argues our prior opinion was incorrect in several particulars. While we

deny the petition for rehearing, we briefly address the state's contentions.

The state first contends this court "clearly misapprehended the facts" in stating that Mr. Satcher only owned a majority of the land surrounding the pond. The state did not present in the record a detailed map or diagram showing the area in dispute, so this court relied on the testimony at the magistrate's hearing. There, the following testimony was given:

HEAD: ... [Satcher] owns one side of the creek all the way down and back up to almost the highway, which Mr. Blackwell has got 2.16 acres right there on that one corner which [Satcher] don't own. Am I correct?

SATCHER: That's correct.

Later in the trial, the following occurred:

COURT: This is Mr. Satcher's, all of this is Mr. Satcher's private property?

OFFICER: Yes sir.

HEAD: Wait a minute that 2.6 acres right here don't belong to Mr. Satcher and none of this on the side.

COURT: So Mr. Satcher's property starts right in here somewhere.

OFFICER: Yes sir, where the pond actually starts is where the state contends is private property.

The only map which this court was provided was the South Carolina Water Resources Commission Map, which did not reflect either the area in detail or the parcels of the nearby property owners. As best as this court can discern, therefore, the record reflects that a small portion of the relevant area at issue was not owned by Satcher.

The state seems to believe this court rejected application of the rule in *Bott v. Commission of Natural Resources*, 415 Mich. 45, 327 N.W.2d 838 (1982), based on our belief that Satcher did not own all of the land surrounding the pond. However, as the opinion clearly reflects, this was not the basis for the court's rejection of application of the *Bott* rule. Even if this court is in error in reading the above-quoted testimony as an indication that Satcher did not own all of the property in the relevant area at issue, that fact would not make a difference to our analysis.

The state argues the court's statement, that the creek continues through the dam and on to the North Fork of the Edisto River, is in error, because, as the court also recognized, the dam physically blocks navigation past it. However, the court obviously was referring to the fact that the creek continues through the dam's spillway and on to the North Fork of the Edisto River. The state contends that no "valuable floatage" could continue through the spillway of the dam. However, we clearly held that occasional artificial or natural obstructions to navigability do not change the character of an otherwise navigable stream.

Finally, the state argues that this court was in error when we stated, "[t]his case involves a dam, which, if built on a navigable stream, is of course not built entirely on private property." The state cites *State ex rel. McLeod v. Sloan Constr. Co.*, 284 S.C. 491, 328 S.E.2d 84 (Ct.App.1985), for the proposition that one who owns land adjacent to a nontidal freshwater stream has title to the center of the stream, absent reservation by the grantor. In *McLeod* the claimant could trace its title to a 1767 grant from King George III, and the court noted, "[w]e hold that under the common law as it existed in South Carolina in 1767 the [1767] Grant conveyed ownership of the soil to the center of the Broad River." 284 S.C. at 497, 328 S.E.2d at 87–88. There is support in South Carolina law for the proposition that in the case of a nontidal navigable stream, the adjacent property owner owns to the center of the stream bed and the public only has an easement to use the waterway. *See McDaniel v. Greenville–Carolina Power Co.*, 95 S.C. 268, 78 S.E. 980 (1913); *State ex rel. Columbia Bridge Co. v. City of Columbia,* 27 S.C. 137, 3 S.E. 55 (1887). However, while we modify the opinion to reflect this proposition, it does not change our analysis or the result.

Accordingly, the petition for a rehearing is denied. The original opinion, however, is withdrawn and the attached opinion is substituted therefor.

CURETON, Judge:

The State appeals from the circuit court's reversal of Singletary Head's (Head) convictions for two counts of violating S.C.Code Ann. § 50–1–90 (Supp.1996), which prohibits fishing

on the lands of another without the owner's permission. The main issue raised on appeal is whether the body of water on which Head was fishing is private property, or is "navigable" and therefore owned by the state and open to the public. We affirm.

## I. FACTS

Ben Satcher owns land surrounding Black's Pond, which is a 246 acre lake on Black Creek in Lexington County. At some prior point in time, one or more of Satcher's predecessors-in-interest dammed Black Creek to create the lake. Satcher also owns land adjacent to the creek below the dam, and Satcher testified he is assessed and pays property taxes for the entire parcel, including the land beneath the lake. The dam has a spillway, through which Black Creek continues to eventually link with the North Fork of the Edisto River. The dam blocks any navigation of Black Creek past the lake, and a boat would have to be physically carried across the dam and down the bank in order to continue down the creek.

Some time prior to March of 1995, Satcher repeatedly complained to the South Carolina Wildlife Commission about people fishing on Black's Pond, which he considers his private property. Satcher has posted "No Trespassing" signs near the entrance to the lake. In response to Satcher's complaints, a wildlife officer patrolled Black's Pond by boat in March 1995. The officer found Head and a friend in a boat fishing within the pond, and informed the two fishermen that the pond was private property. The officer also told the men they could not put their boat in the creek near a highway bridge some distance upstream. In August 1995, the officer again found Head and his friend fishing in the lake. Although the two fishermen claimed they were unclear as to whether they could still enter the lake since they had obtained permission to land their boat upstream, the officer told them Satcher would likely press charges against them. Satcher did so, but the officer was unable to contact Head, who works late shifts. In October 1995, the officer again found Head and his friend fishing on the pond, and he informed them that warrants were issued for the August incident and it was likely Satcher would press charges against them for the October incident. Satcher did

so, and Head and his friend were each tried on two counts before a magistrate in November 1995.

At trial, Head testified he is a longtime resident of the Midlands who has been fishing, boating, and swimming in Black Creek since he was a young boy. He stated other members of the public have engaged in recreation at the area as well. Since the wildlife officer told Head he could not land his boat near the highway bridge, Head paid an upstream landowner $100 for a "leasehold" to launch and land his boat on the landowner's property. Finally, Head produced aerial photographs as well as a map entitled "Navigable Waters of South Carolina," produced by the South Carolina Water Resources Commission (Commission). This map, which reflects the Commission's determination of navigable waterways through its interpretation of the applicable statutes and regulations, lists and maps the relevant area of Black Creek as a navigable waterway. Although Black's Pond is not shown on the map or expressly listed, the map notes, "smaller lakes, although not listed, are considered jurisdictional waters if located on a listed navigable stream."

The magistrate ruled that since the dam prevents boats from travelling downstream without interruption, Black's Pond is not navigable and is Satcher's private property. The circuit court reversed Head's convictions, and noted that if placement of a dam along a waterway is alone sufficient to prevent navigability, "owners of property adjoining navigable waters across our state [could] dam whatever areas they wish to appropriate to their own private and exclusive use."

## II. ANALYSIS

### A. Fishing Without Consent and Navigable Waters

Head was convicted of violating S.C.Code Ann. § 50–1–90 (Supp.1996), which provides:

> If any person, at any time whatsoever, shall hunt or range on any lands or shall enter thereon, for the purpose of hunting, fishing or trapping, without the consent of the owner or manager thereof, such person shall be guilty of a misdemeanor....

Thus, to be convicted, one must (1) hunt, range, or enter upon "any lands," (2) for the purpose of hunting, fishing, or trapping, and (3) without the consent of (4) the owner or manager of the land.

However, the South Carolina Constitution provides:

All navigable waters shall forever remain public highways free to the citizens of the State and the United States without tax, impost or toll imposed; and no tax, toll, impost or wharfage shall be imposed ... unless the same be authorized by the General Assembly.

S.C. Const. art. XIV, § 4. See also S.C. Const. art. XIV, § 1. Moreover, S.C.Code Ann. § 49–1–10 (Rev.1987) similarly provides:

All streams which have been rendered or can be rendered capable of being navigated by rafts of lumber or timber by the removal of accidental obstructions and all navigable watercourses and cuts are hereby declared navigable streams and such streams shall be common highways and forever free. . . .

These constitutional and statutory provisions expressly sanction the preexisting common-law rights of the public in navigable watercourses. State ex rel. Lyon v. Columbia Water Power Co., 82 S.C. 181, 63 S.E. 884 (1909). The state holds tidal navigable watercourses subject to a public trust, and the state's ownership of public trust resources is generally not alienable:

The control of the State for the purposes of the trust can never be lost, except as to such parcels as are used in promoting the interests of the public therein, or can be disposed of without any substantial impairment of the public interest in the lands and waters remaining.

Illinois Cent. R.R. Co. v. Illinois, 146 U.S. 387, 453, 13 S.Ct. 110, 118, 36 L.Ed. 1018 (1892), quoted in Sierra Club v. Kiawah Resort Assocs., 318 S.C. 119, 127–28, 456 S.E.2d 397, 402 (1995). See also State v. Hardee, 259 S.C. 535, 193 S.E.2d 497 (1972). It appears, however, that in the case of nontidal navigable streams, while the adjacent property owners hold title from their shoreline to the center of the stream bed, the public has an easement in use of the waterway. See State ex rel. Columbia Bridge Co. v. City of Columbia, 27 S.C. 137, 146,

3 S.E. 55, 58 (1887) ("It is true that this proprietary right to the center of such streams is subject to the right of the public to use such streams for transportation as a highway, where such streams are in fact, though not technically, navigable, or may be made so by the removal of obstructions. But this right of easement in the public does not deprive the riparian proprietor of his title to the soil covered by the stream, as far as the center of the stream."). *See also McDaniel v. Green-ville–Carolina Power Co.*, 95 S.C. 268, 78 S.E. 980 (1913). *Cf. State ex rel. McLeod v. Sloan Constr. Co.*, 284 S.C. 491, 328 S.E.2d 84 (Ct.App.1985) (private citizen owned to the middle of bed of Broad River, a nontidal navigable stream, as citizen could trace title to Crown grant made at time when South Carolina followed the English tidal test for state ownership of river beds). Thus, if a nontidal watercourse is navigable, then a person who legally accesses the watercourse, and fishes from within a boat on the watercourse, cannot be convicted of violating § 50–1–90, as such a person has a constitutional and statutory right to be there.

### B. Scope of Review and Burden of Proof

In a *criminal* appeal from a magistrate, the circuit court does not conduct a *de novo* review, but instead reviews for preserved error raised to it by appropriate exception. S.C.Code Ann. § 18–3–70 (Supp.1996); *City of Columbia v. Felder*, 274 S.C. 12, 260 S.E.2d 453 (1979) (circuit court erred by reversing traffic conviction due to erroneous statement of law by municipal judge, because the defendant did not contemporaneously object to the municipal judge's statements and did not raise the issue by exception to the circuit court). *See also State v. Sullivan*, 310 S.C. 311, 426 S.E.2d 766 (1993) (defendant preserved issue of HGN test, as he objected to introduction of field sobriety tests at magistrate's trial, and state did not object to his supplemental exception which raised the issue to the circuit court). In a criminal case, this court reviews errors of law. *State v. Cutter*, 261 S.C. 140, 199 S.E.2d 61 (1973), *cert. denied*, 415 U.S. 921, 94 S.Ct. 1423, 39 L.Ed.2d 477 (1974). This court cannot address unpreserved errors. *Noisette v. Ismail*, 304 S.C. 56, 403 S.E.2d 122 (1991).

The state first contends that Head failed to prove Black Creek and Black's Pond are navigable. It argues that

the burden of proving navigability of a watercourse rests on the party asserting navigability, and it cites *Goose Creek Hunting Club, Inc. v. United States,* 207 Ct.Cl. 323, 518 F.2d 579 (1975) (inverse condemnation action). The state bears the burden of proving all elements of a criminal offense beyond a reasonable doubt. *See, e.g. Smith v. State,* 309 S.C. 413, 424 S.E.2d 480 (1992). Here, the state bore the burden of proving Head actually entered upon the private property of an owner who did not consent.

At trial, the only matter in dispute was whether Head was on a navigable waterway when the wildlife officer observed him and his friend fishing. The parties did not dispute any other material facts. The state presented (1) the officer's testimony that Satcher complained people were fishing on his pond, (2) Satcher's testimony that the pond belonged to him and he erected "No Trespassing" signs, and (3) Satcher's testimony that he is assessed property taxes on the entire parcel, including the land beneath the lake. Head, who appeared *pro se,* presented (1) the Commission's map showing Black Creek as navigable, and (2) his testimony that he and other members of the public have been fishing on the creek for a long period of time. The magistrate wrote in his return that Head "made the following motion: That [Black Creek] was a navigable watterway [sic]." The magistrate further noted, "This case is based on the objection to guilt, whether or not the lake in question is a navigable watterway [sic]." On appeal, the circuit court concluded that Black Creek is navigable. Both the parties and the circuit court have treated the dispositive issue on appeal as whether Black Creek is navigable, which was a factual issue decided by the magistrate in a criminal case.[1]

---

1. The issue of navigability arises only under the "owner" element of the "fishing without consent" statute. Navigability is a question of fact. *See* 65 C.J.S. *Navigable Waters* § 9 (1966). Ownership is generally a question of fact as well. *Cf. Unisun Ins. Co. v. First Southern Ins. Co.,* 319 S.C. 419, 462 S.E.2d 260 (1995) (ownership for purposes of insurance coverage); *Garrett v. Locke,* 309 S.C. 94, 419 S.E.2d 842 (Ct.App.1992) ("The issue of paramount title is ordinarily a question of fact to be decided by the jury.") Factual findings in criminal cases are reviewed on appeal for sufficiency of the evidence if the issue is preserved by motion for directed verdict at trial. *See, e.g. State v. Lee,* 294 S.C. 461, 365 S.E.2d 734 (1988).

## C. Test for Navigability

] In any event, if the magistrate reached his conclusion of Satcher's ownership of Black Creek at the site of the lake, and thus Head's guilt, based on an erroneous proposition of law regarding navigability, then reversal was warranted. In order to object to an improper statement of law, the objector must specify why it is not a correct proposition. *Broom v. Southeastern Highway Contracting Co.*, 291 S.C. 93, 352 S.E.2d 302 (Ct.App.1986). Here, Head argued strenuously against the magistrate's ruling that a waterway would cease to be navigable if it was no longer a thoroughfare due to obstruction by a dam. Head further suggested the correct law to be applied. Thus, Head preserved this issue.

] The state concedes the magistrate applied an erroneous test by ruling that since the Black's Pond dam prevented uninterrupted boat travel along Black Creek, the watercourse was not navigable. The parties agree that the proper test is whether a stream has the capacity for "valuable floatage," regardless of the fact or extent of actual use. *State ex rel. Medlock v. South Carolina Coastal Council*, 289 S.C. 445, 346 S.E.2d 716 (1986).

The state argues that even if the appropriate test is applied, Black Creek is not navigable. It points to the following language in *Heyward v. Farmers' Min. Co.*, 42 S.C. 138, 155, 19 S.E. 963, 972 (1894):

> Chief Justice Shaw ... says: "It is not every small creek in which a fishing skiff or gunning canoe can be made to float at high water which is deemed navigable; but, in order to have this character, it must be navigable for some purpose useful to trade or agriculture." But this language is applied to the capacity of the stream, and is not intended to be a strict enumeration of the uses to which it must be actually applied in order to give it that character.

However, the court in *Medlock* noted the modern trend that water is navigable if it is "of such character as to be of general use by the public for pleasure boating." 289 S.C. at 449, 346 S.E.2d at 719 (citing the discussion in *State ex rel. Lyon v. Columbia Water Power Co.*, 82 S.C. 181, 63 S.E. 884 (1909)). The *Medlock* court recognized the "strong emphasis and protection afforded public boating," and found that the ongoing

recreation in the waterway at issue was "a legitimate and beneficial public use." Thus, it concluded the waterway was navigable even though it could only be navigated at low tide by "outboard motor boats equipped with small to medium-size engines." 289 S.C. at 448–50, 346 S.E.2d at 718–19.

Moreover, in *Hughes v. Nelson*, 303 S.C. 102, 399 S.E.2d 24 (Ct.App.1990), the court held that a canal which the general public used for sport fishing was navigable, even though a former property owner dug the canal through his property to its connection with the Edisto River. *Hughes* echoed *Medlock*'s recognition that small fishing boats and pleasure craft may constitute "valuable floatage," and it stated that the canal's insufficient depth during periods of the year was irrelevant, as the "test is whether [the waterway] is accessible 'at the ordinary stage of the water.'" *Hughes*, 303 at 105–06, 399 S.E.2d at 25–26. Similarly, 23 S.C.Code Ann. Regs. 19–450.2(C) (Supp.1996) defines "navigable waters" as "those waters which are now navigable, or have been navigable at any time, or are capable of being rendered navigable by the removal of accidental obstructions, by rafts of lumber or timber or by small pleasure or sport fishing boats."

] Accordingly, relevant authorities have considered a waterway navigable in the appropriate case if a small sport fishing boat could negotiate it at its ordinary stage. However, the existence of occasional natural obstructions to navigation, such as rapids or falls, or the construction of authorized or unauthorized artificial obstructions to navigation, such as dams, generally does not change the character of an otherwise navigable stream. *See State ex rel. Guste v. Two O'Clock Bayou Land Co.*, 365 So.2d 1174 (La.App.1978); 65 C.J.S. *Navigable Waters* § 5(3) (1966). Artificial lakes along navigable streams are generally open to public use as well, even if they were created by an authorized private entity and cover part of privately owned land. *Cf. Diversion Lake Club v. Heath*, 126 Tex. 129, 86 S.W.2d 441 (1935) (successor-in-interest, to riparian owner who dammed navigable stream pursuant to a permit, could not exclude fishermen from any part of the lake, even though the state only owned the original creek bed and the successor owned the rest of the formerly dry land now underneath the lake's waters, as "the water of the lake, notwithstanding the fact that most of its bed is

privately owned, is still public water," and the permit did not give the landowner a "right to interfere with the public in their use of the river and its water for navigation [or] fishing"), *quoted in Natland Corp. v. Baker's Port, Inc.,* 865 S.W.2d 52 (Tex.App.1993).[2]

▮ As noted before, the state concedes the magistrate applied an erroneous test. In fact, the record reflects the magistrate clearly agreed that the relevant area of Black Creek was navigable except for his erroneous belief that a "stopping point" such as a dam necessarily prevented navigability. In view of this finding, we find it unnecessary to remand for application of the proper test.[3]

## III. CONCLUSION

▮ A waterway which only supports use by small fishing or pleasure craft does, in the appropriate case, meet the "valuable floatage" test for navigability. The fact that a dam prevents a continuous thoroughfare along a stream does not

---

2. *Natland* cited *Hughes* for the proposition that "continuous and unobstructed use of [a] private canal by the public may establish public right to fish in the canal." *Natland,* 865 S.W.2d at 64. *Natland*'s citation evidently refers to *Hughes*'s holding that even if an opinion of our Attorney General is correct in stating a canal built entirely on private property is akin to a private road, the canal at issue there was not private because the public had not been "continuously and consistently excluded." *Hughes,* 303 S.C. at 106–07, 399 S.E.2d at 26 (citing 1986 Op. Att'y Gen. 303). Again assuming without deciding the correctness of the Attorney General's opinion, this case involves complete obstruction of a waterway by a dam, which is obviously distinguishable from a situation where a tributary canal is carved from private land adjacent to a navigable waterway.

3. We reject the state's contention that this case warrants application of the "dead-end private lake" rule developed in *Bott v. Commission of Natural Resources,* 415 Mich. 45, 327 N.W.2d 838 (1982). We would note that in *Bott,* the lakes at issue had no inlets and the outlets from the two lakes were at one point only eight and six inches deep, respectively. 327 N.W.2d at 839–841, nn. 2–3. *Cf.* 65 C.J.S. *Navigable Waters* § 5(4) (1966) ("[A] small inland lake not useful for commerce in itself and having no navigable outlet is not navigable."). *Bott* does state that "although there is a navigable means of access, the littoral owner of all the land surrounding a small inland dead-end lake has the sole right to use it." 327 N.W.2d at 841. However, the dam here does not make the lake a dead end, as the creek continues on through the lake and towards the North Fork.

necessarily cause the stream to lose its navigable character. We affirm the circuit court's reversal of Head's convictions.

**AFFIRMED.**

GOOLSBY and CONNOR, JJ., concur.