676 S.E.2d 116

**Samuel BROWNLEE and Richard Jolly, Respondents,**

v.

**SOUTH CAROLINA DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL, Petitioner.**

No. 26620.

Supreme Court of South Carolina.

Heard Jan. 22, 2009.

Decided March 30, 2009.

Rehearing Denied May 13, 2009.

130

General Counsel Carlisle Roberts, Jr. and Staff Attorney Sara P. Bazemore, of Columbia, for Petitioner.

Christopher M. Holmes, of Mt. Pleasant, for Respondents.

Justice BEATTY.

We granted the petition of the South Carolina Department of Health and Environmental Control (DHEC) for certiorari to review the decision in *Brownlee v. South Carolina Department of Health and Environmental Control,* 372 S.C. 119, 641 S.E.2d 45 (Ct.App.2007). In *Brownlee,* the South Carolina Court of Appeals reversed a circuit court order affirming the denial of dock permits to Samuel Brownlee and Richard Jolly (Landowners) by DHEC's Office of Ocean and Coastal Resource Management (OCRM). We reverse, finding DHEC properly denied the permit requests.

## I. FACTS

Landowners have property on Johns Island that is adjacent to an unnamed tributary of the Bohicket River in Charleston County, South Carolina. Landowners brought this action against DHEC after it denied their requests for construction permits to extend their docks across the tributary to the Bohicket River. Landowners asserted the location of a dock owned by a neighbor, Lawrence Atkinson, was situated near the mouth of the tributary in a manner that made the water no longer navigable.

DHEC denied the permits on the basis it would be contrary to existing regulations to allow the docks to cross the tributary. Specifically, after DHEC staff conducted a boat trip in the area, DHEC determined the tributary was navigable and that construction of the docks would violate the regulatory prohibition on crossing navigable creeks. DHEC advised the Landowners of its decision in letters sent in April 2002:

OCRM staff [DHEC] has determined that authorizing the dock extension would be counter to Regulations. OCRM Regulations specifically state, "docks shall not impede navigation and they can only extend to the first navigable creek as evidenced by a significant change in grade." OCRM staff performed a boat trip and found that the creek exhibits significant width (50') and change in grade at your dock that exudes the very nature of a waterbody that is navigable. Furthermore, the creek has an established history of public use as evidenced by the 4 docks that currently access this creek.

DHEC relied upon several provisions, including former 23A S.C.Code Ann. Regs. 30–12(A)(2)(n) (Supp.2001),[1] in support of the denial of Landowners' applications. This regulation has since been amended, but the former version relied upon by DHEC at the time the permit applications were considered is controlling for purposes of this appeal.[2]

---

**1.** Former regulation 30–12(A)(2)(n) provided as follows:

Docks must extend to the first navigable creek with a defined channel as evidenced by a significant change in grade with the surrounding marsh. Such creeks cannot be bridged in order to obtain access to deeper water. However, pierheads must rest over open water and floating docks which rest upon the bottom at normal low tide will not normally be permitted.

**2.** The current version of this provision, now renumbered and denominated as Regulation 30–12(A)(1)(n), states as follows:

Docks must extend to the first navigable creek, within extensions of upland property lines or corridor lines, that has a defined channel as evidenced by a significant change in grade with the surrounding marsh; or having an established history of navigational access or use. *Such creeks may only be bridged/crossed when there are rare geographic circumstances,* such as very close proximity of a significantly larger creek within extensions of property or corridor lines, [which] may warrant dock extension to a creek other than the first navigable creek. A creek with an established history of navigational use may also be considered as navigable. *In exceptional cases,* the Depart-

Upon review, an administrative law judge [3] (ALJ) ordered DHEC to issue the permits. The ALJ noted that "[a] creek is not navigable unless the waterway has the capacity for 'valuable floatage,' and the test is not whether it is accessible at all times, but whether it is accessible at the ordinary stage of the water." He stated that "the area of the tributary in front of [Landowners'] property is currently a defined channel, as evidenced by a significant change in grade with the surrounding marsh." However, he "conclude[d] that in order for a waterway to be legally navigable under Regulation 30–12A(2)(n), the navigation of the waterway must not be so impeded as to create a frequent hazard."

The ALJ stated the waterway was not navigable and explained "the determination that the tributary is not navigable is due to a man-made impediment. If the Atkinson dock is removed from its location in the mouth of the tributary, the impediment would no longer exist and the tributary would be a navigable stream." The ALJ reversed DHEC's decision and remanded the case for DHEC to either have the Atkinson dock removed from its current location and built as permitted [4] or to approve Landowners' applications.

---

ment may allow an open water channel to be bridged if *current access is prohibited* by other man made or natural restrictions or if site-specific conditions warrant such a crossing.

23A S.C.Code Ann. Regs. 30–12(A)(1)(n) (Supp.2008) (emphasis added). DHEC notes that under either version of the regulation—the one in effect when the permits were first considered or the current regulation—DHEC would deny the permit applications. Under the current regulation, access must be *prohibited* by a man-made or natural restriction to warrant an exception, and the parties acknowledge that access is not *prohibited* at this time. Landowners argue there was an intervening version of the regulation that allowed a navigable creek to be bridged if the creek merely had impeded access, so the permits should be granted. However, we find this argument is unavailing as it is clear that this prior version, which existed for a limited time, is not applicable in this case and it does not mandate granting of the permits, in any event.

3. The name has since changed to the Administrative Law Court.

4. In 1991, as Atkinson was building his dock, the South Carolina Coastal Council, the predecessor to DHEC's OCRM, discovered through a neighbor's report and an on-site inspection that he was not in compliance with the dock permit he had been issued. Atkinson requested authorization for construction of the dock "as-built." By letter dated September 4, 1991, DHEC denied the request, finding the loca-

Upon motion, the ALJ amended his order "to clarify [his] conclusions as follows:

> Though the waters of the tributary in front of the [Land-owners'] property *are navigable,* the waterway itself is not navigable *because the mouth of the tributary* cannot safely be entered at the ordinary stages of the tide. This case presents exceptional facts because the safety of the navigation varies depending upon the winds, tide, currents, etc."
> [Emphasis added.]

In this amended order, the ALJ ordered DHEC to grant outright Landowners' permit applications to extend their docks to the Bohicket River.

The Coastal Zone Management Appellate Panel (the Appellate Panel) reversed the ALJ and reinstated the denial of the permits, finding the ALJ had erred in several conclusions of law. Specifically, the Appellate Panel found the ALJ "erred in his interpretation of 23A S.C.Code Ann. Regs. 30–12(A)(2)(n), where he concludes in Conclusion of Law Number 6, that 'in order for a waterway to be legally navigable . . ., the navigation of the waterway must not be so impeded as to create a frequent hazard.'" In addition, the panel found the ALJ committed "reversible error in Conclusion of Law Number 4, specifically: 'the facts establish that the mouth of the tributary cannot be consistently navigated safely at the ordinary stages of the tides because of the Atkinson dock. Therefore, I find that it currently is not a navigable waterway.'"

---

tion of the dock is substantially different from that originally permitted and that it "presents a hazard to navigation both in its proximity to the mouth of the tributary and in its channelward extension." Atkinson was advised in the letter that enforcement proceedings would be instituted to bring the dock into compliance. On November 22, 1991, the Coastal Council issued an Administrative Order finding the Atkinson dock was not in compliance with the permit and instructing Atkinson to relocate the dock within thirty days. However, there is no indication in the record that any enforcement action was ever taken. At oral argument, we asked DHEC for further information about the status of the Atkinson dock. DHEC subsequently provided a letter dated October 27, 1992 from the Coastal Council to Atkinson advising Atkinson that his "permit has been amended to authorize the 'as-built' dock" and that the amendment closed the "enforcement file" in this case. Atkinson was advised, however, that "[t]his letter does not relieve you of your responsibility of acquiring any other applicable federal or local permits that may be required."

The circuit court affirmed the Appellate Panel. The circuit court stated the "central issue" in this case "concerns an interpretation of state law that limits the circumstances under which docks may be constructed across navigable waterways, specifically the interpretation of ... Reg. 30–12. . . ." The circuit court concluded that the Appellate Panel acted "within the scope of [its] authority by setting forth [its] own interpretation of the regulations" and "agree[d] with [its] interpretation that Reg. 30–12 prohibits the crossing of navigable waterways unless there is an obstruction, which prohibits navigation at most stages of the tide cycle."

Upon further review, the South Carolina Court of Appeals reversed in a split decision. The majority found the ALJ had not committed an error of law and his factual findings were supported by substantial evidence and should be upheld under the applicable standard of review. *Brownlee,* 372 S.C. at 126, 641 S.E.2d at 48. In particular, the majority held the Appellate Panel's determination that the ALJ had misinterpreted what constitutes a navigable waterway under Regulation 30–12(A)(2)(n) was in error. *Id.*

The dissent, in contrast, agreed with the Appellate Panel's determination that the ALJ erred in his interpretation of what legally constitutes a navigable waterway. The dissent noted that the ALJ had expressly found the tributary was navigable, but the ALJ had, nevertheless, concluded that because navigation at the mouth of the tributary was impeded by the Atkinson dock, the tributary was rendered nonnavigable. *Id.* at 133, 641 S.E.2d at 52 (Goolsby, J., dissenting). The dissent contended that "[t]he mere fact that an artificial structure, such as Atkinson's dock, impedes navigation, does not make the waterway nonnavigable" and that there was "no compelling reason to reverse the agency's interpretation of its own regulation." *Id.* at 134, 641 S.E.2d at 52. This Court granted DHEC's request for a writ of certiorari.

## II. ISSUES

On certiorari, DHEC contends the Court of Appeals erred in evaluating the legal standard for navigability in this case as a question of fact rather than a question of law. DHEC also

contends the Appellate Panel's interpretation of its regulation should be awarded deference and upheld.

## III. LAW/ANALYSIS

### A. Standard of Review

■ This case involved multiple levels of review. Under the Administrative Procedures Act, the ALJ presided as the fact finder in this matter. *Brown v. South Carolina Dep't of Health & Envtl. Control*, 348 S.C. 507, 560 S.E.2d 410 (2002). The proceeding before the ALJ was in the nature of a de novo hearing, including the presentation of evidence and testimony. *Id.* Under the review procedure in effect at the time, the Appellate Panel was authorized to reverse the ALJ based on an error of law or if his findings were not supported by substantial evidence.[5] *See Dorman v. South Carolina Dep't of Health & Envtl. Control*, 350 S.C. 159, 565 S.E.2d 119 (Ct.App. 2002).

■ "Courts defer to the relevant administrative agency's decisions with respect to its own regulations unless there is a compelling reason to differ." *South Carolina Coastal Conservation League v. South Carolina Dep't of Health & Envtl. Control*, 363 S.C. 67, 75, 610 S.E.2d 482, 486 (2005); *see also Brown v. Bi–Lo, Inc.*, 354 S.C. 436, 440, 581 S.E.2d 836, 838 (2003) ("We recognize the Court generally gives deference to an administrative agency's interpretation of an applicable statute or its own regulation.").

### B. Navigability

DHEC argues the Court of Appeals erred in evaluating navigability as a question of fact because DHEC does not challenge the facts in this case, but rather, the legal standard applied by the ALJ. DHEC asserts: "[T]he ALJ developed a test which provides that a waterbody is not navigable when challenges to easy and safe navigation exist. In contrast, the

---

5. The review procedure under the Administrative Procedures Act was changed by 2006 South Carolina Laws Act No. 387, which eliminated the review of the ALJ's determination by the Appellate Panel. *Chem– Nuclear Sys. v. South Carolina Bd. of Health & Envtl. Control*, 374 S.C. 201, 648 S.E.2d 601 (2007). However, this appeal continues under the prior procedure.

[Appellate] Panel determined that pursuant to the legal test of navigability, a waterbody is navigable despite certain challenges to navigability. That fundamentally is a dispute as to the appropriate legal standard, and not a dispute of facts." DHEC contends "[t]he [Appellate] Panel interpreted regulation 30–12(A)(2)(n) to mean that some impairment does not render a waterbody nonnavigable.... In practical terms, every dock creates some impairment to navigation, yet that does not render the waterbody nonnavigable."

DHEC further contends that "under the ALJ's test of navigability which considers wind, currents and safety, the frequent small craft advisories issued ... on windy days would potentially result in [waterways] being deemed [nonnavigable] at times and ultimately destroy the navigable status of [waterways] containing 'unsafe' conditions." DHEC argues the Court of Appeals erred in viewing the appeal as a dispute of fact rather than a challenge to the correct legal standard.

In this case, the Court of Appeals stated the question of navigability was a question of fact and that the ALJ found those facts adverse to DHEC and these findings should be upheld under the applicable standard of review. Although navigability may turn on the facts of the case, the determination regarding navigability here was influenced by the ALJ's interpretation of the law. The majority extensively quoted the ALJ's findings, stating these were factual findings that were supported by the evidence. However, the findings and conclusions were based on the definition of navigability that was applied and the interpretation of a regulation. The ALJ found the tributary in front of Landowners' property was inherently navigable, but concluded the entire tributary had been rendered nonnavigable because a neighbor's dock at "the mouth of the channel" created an impediment at that point. Although we agree the ALJ is the fact-finder in this proceeding, we find that his determination of navigability was based on his application of those facts to the law.

Former Regulation 30–12(A)(2)(n), which was in effect at the time of DHEC's consideration of the permit applications, provided that docks could *not* be built over "navigable creeks" in order to access deeper water:

138

> Docks must extend to the first navigable creek with a defined channel as evidenced by a significant change in grade with the surrounding marsh. *Such creeks cannot be bridged in order to obtain access to deeper water.* However, pierheads must rest over open water and floating docks which rest upon the bottom at normal low tide will not normally be permitted.

23A S.C.Code Ann. Regs. 30–12(A)(2)(n) (Supp.2001) (emphasis added).

 "Navigable water is a public highway which the public is entitled to use for the purposes of travel either for business or pleasure." *State ex rel. Lyon v. Columbia Water Power Co.,* 82 S.C. 181, 189, 63 S.E. 884, 888 (1909).

Navigable water is protected under state law to ensure public access. S.C. Const. art. XIV, § 4 (declaring navigable waters to be public highways for which citizens are entitled to free access); S.C.Code Ann. § 49–1–10 (Supp.2008) ("All streams which have been rendered or can be rendered capable of being navigated by rafts of lumber or timber by the removal of accidental obstructions and all navigable watercourses and cuts are hereby declared navigable streams and such streams shall be common highways and forever free....").

 In determining navigability, "[t]he true test to be applied is whether a stream inherently and by its nature has the *capacity* for valuable floatage, irrespective of the fact of actual use or the extent of such use." *State ex rel. Medlock v. South Carolina Coastal Council,* 289 S.C. 445, 449, 346 S.E.2d 716, 719 (1986). "Valuable floatage is not necessarily commercial floatage." *Id.* Commercial use of the waterway is not required for it to be navigable; and pleasure traffic is entitled to protection in using the waterway. *Hughes v. Nelson,* 303 S.C. 102, 399 S.E.2d 24 (Ct.App.1990).

 "Valuable floatage" is a term that has been used as the standard in this state for many years. *See Heyward v. Farmers' Mining Co.,* 42 S.C. 138, 19 S.E. 963 (1894) (applying this term). "Valuable floatage" is not determined by what specific size or class of vessel or object can achieve buoyancy in the waterway; rather, the term is defined broadly to

include any legitimate and beneficial use, whether commercial or recreational. *White's Mill Colony, Inc. v. Williams,* 363 S.C. 117, 125, 609 S.E.2d 811, 815 (Ct.App.2005).

As we have previously stated:

Section 49–1–10 of the South Carolina Code does not change the definition of navigable waters, but merely emphasizes the law already declared and set out in *Heyward v. Farmers' Mining Company,* 42 S.C. 138, 19 S.E. 963 (1894). The Court in *Heyward* rendered a thorough pronouncement of the law of navigability. As noted in *Heyward,* the common law doctrine that the navigability of a stream is to be determined by the ebb and flow of the tide was repudiated in South Carolina in the case of *State v. Pacific Guano Co.,* 22 S.C. 50 (1884).

The Court clarified in *Heyward v. Farmers' Mining Company,* 19 S.E. at 971, that *neither the character of the craft nor the relative ease or difficulty of navigation are tests of navigability.* The surroundings (e.g. marshland) need not be such that it may be useful for the purpose of commerce nor that the stream is actually being so used. The Court points out a distinction between navigable waters of the United States and navigable waters of the State. In order to be navigable under the United States, the water must connect with other water highways so as to subject them to the laws of interstate commerce. This is not a requirement for navigability of waters under the control of the State.

*State ex rel. Medlock,* 289 S.C. at 449, 346 S.E.2d at 719 (emphasis added). Nelson blocked the opening to the canal and argued it was not navigable because "the canal cannot sustain boat traffic or be fished for certain periods during the year because of insufficient depth." *Id.* at 106, 399 S.E.2d at 26.

■ Access at all times is not required for the waters to be navigable. In *Hughes v. Nelson,* the Court of Appeals held a canal was navigable despite the fact that, "[a]t certain times of the year, the canal has very little water in it, making access difficult." *Hughes,* 303 S.C. at 104, 399 S.E.2d at 25. The canal was approximately fifteen feet wide and twelve feet deep

and had been used by the public for fishing and recreation, but not commercial traffic.

In rejecting the argument the canal was not navigable, the Court of Appeals stated: "The test of navigability is not whether a waterway is accessible at all times. Rather, the test is whether it is accessible 'at the ordinary stage of the water.'" *Id.* (quoting *State v. Columbia Water Power Co.*, 82 S.C. 181, 186, 63 S.E. 884, 888 (1909)).

■ Moreover, "[i]n order that the stream or body of water be classed as navigable, it need not be navigable in its entirety." 65 C.J.S. *Navigable Waters* § 7 (2000). "In other words, a stream or body of water which is susceptible of being used in its ordinary condition as a highway of commerce may be navigable regardless of whether it admits the passage of boats at all portions thereof, and the general character of a stream as being navigable is not changed by the fact that at a particular place it is not in fact navigable by boats." *Id.*

In this case, the ALJ specifically stated that "the waters of the tributary in front of [Landowners'] property *are navigable,*" but nevertheless concluded that "the waterway itself is not navigable *because the mouth of the tributary* cannot safely be entered at the ordinary stages of the tide. This case presents exceptional facts because the safety of the navigation varies depending upon the winds, tide, currents, etc." [Emphasis added.] The ALJ referred to the test for navigability, but added the additional qualification that navigation of the waterway must not be so impeded as to create a frequent hazard.

■ The fact that the mouth of the tributary has a man-made impediment does not render the entire tributary non-navigable. "The navigability of water does not depend on its actual use for navigation, but on its capacity for such use. . . . [T]he definition of navigable water embraces, not only that which is actually used, but that which is susceptible of use for navigation in its ordinary state." *State ex rel. Lyon,* 82 S.C. at 187, 63 S.E. at 888. In *State ex rel. Lyon,* we held that the fact that a waterway ceased to be passable because a lock at the Broad River terminus had been so neglected that it could not be used did not render the waterway nonnavigable as the waterway was capable of navigation up to the lock. *Id.*

As the dissent noted in the current appeal, the test for navigability does not hinge on the existence of man-made impediments or other obstructions, and these impediments do not cause the waterway to lose its characterization as navigable.[6] *See* 65 C.J.S. *Navigable Waters* § 8 (2000) ("As a general rule a stream or other body of water is not rendered nonnavigable because of occasional difficulties attending navigation. The existence of occasional natural obstructions do not destroy the navigability of a river. So, a stream may be navigable despite the obstruction of falls, rapids, sand bars, carries, or shifting currents. Artificial obstructions which are capable of being abated by the due exercise of public authority do not prevent a stream from being regarded as navigable. . . ." (footnotes omitted)); *see also State v. Head*, 330 S.C. 79, 89, 498 S.E.2d 389, 394 (Ct.App.1997) ("[T]he existence of occasional natural obstructions to navigation, such as rapids or falls, or the construction of authorized or unauthorized artificial obstructions to navigation, such as dams, generally does not change the character of an otherwise navigable stream.").

The ALJ's factual findings are not in dispute in this case, but his conclusions as to navigability were based on not only the facts, but also his interpretation of the legal test for navigability. *See* 65 C.J.S. *Navigable Waters* § 3 (2000) ("Each determination as to navigability must rest on the facts and circumstances of the particular case. To these facts and circumstances, however, certain judicial standards are to be applied for determining whether the complex of conditions with respect to the capacity of the water ... renders it a navigable stream.").

---

6. In his original order the ALJ found the tributary was navigable at mid-tide and higher and it was possible to easily navigate around the Atkinson dock, though the dock presented a hazard: "While the tributary itself can be navigated at mid-tide and higher, the 'thead' of the stream goes underneath the Atkinson dock and is an impediment to boaters attempting to enter or exit the tributary. Though it is possible to easily navigate around the dock, as reflected by the experience of the OCRM staff, that ease of navigation is dependent upon unpredictable winds and currents. Therefore, I find that the Atkinson dock as it is currently situated presents a frequent hazard to safe navigation in and out of the tributary at the ordinary tides due to the location of the channel of the tributary under the Atkinson dock, the existence of the sand bar/mud flat on the side of the mouth opposite the Atkinson dock, and the prevailing winds and currents."

The ALJ essentially found the tributary was navigable but for the Atkinson dock; however, our precedent establishes that the entire tributary did not lose its navigability merely because there was an impediment that made access at the mouth of the tributary where it joined the Bohicket River more difficult. *See State v. Head,* 330 S.C. at 91, 498 S.E.2d at 395 (holding the judge applied an erroneous test of navigability by agreeing that the creek in question was navigable except for a "stopping point" such as a dam that prevented navigability); *see also* 78 Am.Jur.2d *Waters* § 125 (2002) ("Once a waterway has been deemed navigable, it remains so; it retains its navigable status, even though it is ... presently incapable of use because of changed conditions or the presence of obstructions."). Thus, we hold the ALJ committed an error of law in assessing navigability in this case and that the Court of Appeals decision should be reversed.

## C. Atkinson Dock

Finally, we note that the Court of Appeals correctly observed in its majority opinion that the cause of this entire litigation is the location of the Atkinson dock, which has made traversing the mouth of the tributary where it meets the Bohicket River more difficult. *Brownlee,* 372 S.C. at 128, 641 S.E.2d at 49. As that court remarked, "The dock remains to this day in the same place, still impeding navigation." *Id.*

We believe this is a prime example of an "[a]rtificial obstruction[ ] which [is] capable of being abated by the due exercise of public authority," 65 C.J.S. *Navigable Waters* § 8, and we are bewildered as to why DHEC has allowed the Atkinson dock to remain in this location since 1991. After Atkinson built his nonconforming dock, he requested an as-built permit, but the request was promptly denied and Atkinson was advised that enforcement proceedings would be commenced to require the dock to be brought into compliance. Although an administrative order was issued on November 22, 1991 directing Atkinson to relocate the dock within thirty days, the record on appeal revealed no further action taken in this regard.

DHEC opined during oral argument that its failure to require compliance could have arisen from a general lack of

resources, particularly its inability to perform on-site inspections for every permit application. However, an on-site inspection was already conducted by DHEC in 1991 that revealed the dock was not in compliance. Thus, DHEC needed only to follow up on its own directives. After oral argument in this matter, DHEC investigated further and subsequently submitted a letter from the Coastal Council to Atkinson dated October 27, 1992 advising him that it had amended Atkinson's permit and had approved the "as-built" dock. No explanation is provided as to why Atkinson's dock was approved in this manner. We note the unnecessary litigation that has been spawned with this case and several others by the location of the Atkinson dock constitutes a waste of valuable judicial resources. Public funds would have been better spent in enforcing compliance rather than engaging in protracted litigation to resolve what is essentially a dispute among neighbors.

Section 49–1–10 of the South Carolina Code declares that obstruction of a stream is a "nuisance and such obstruction may be abated as other public nuisances are by law." S.C.Code Ann. § 49–1–10 (Supp.2008). We strongly believe that equal enforcement of the rules and regulations and compliance with the law by all parties is absolutely essential to avoiding precisely the problems generated here.

## IV. CONCLUSION

Based on the forgoing, we find the ALJ committed legal error in reversing the Appellate Panel and that DHEC's denial of the permit requests should be reinstated. However, we urge DHEC to take the proper steps to prevent additional unnecessary litigation in this regard. The decision of the Court of Appeals is, hereby,

REVERSED.

TOAL, C.J., and KITTREDGE, J., concur. PLEICONES, J., concurring in part, dissenting in part in a separate opinion in which WALLER, J., concurs.

Justice PLEICONES.

I join the majority except as to Part 3 C captioned "**Atkinson Dock**" and the second sentence of the Conclusion urging DHEC "to take proper steps to prevent additional unnecessary litigation." As I read this record, we are not asked, nor do we have any basis, to comment upon Coastal Council's decision to amend the permit and approve the "as-built" dock, to scold DHEC, to imply that the dock constitutes a "public nuisance," or to suggest that there has been an unequal enforcement of rules and regulations. In my opinion, an appellate court must confine its discussion as narrowly as possible solely to the issues properly presented for its consideration. As Chief Judge Sanders famously wrote, "[A]ppellate courts in this state .... do not answer questions they are not asked." *Langley v. Boyter,* 284 S.C. 162, 325 S.E.2d 550 (Ct.App.1984) *subsequent history omitted.*

WALLER, J., concurs.