THIS OPINION HAS NO
 PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY
 PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 South Carolina Department of Health and Environmental Control, Respondent,
 v.
 Southern Environmental Services, Inc., Appellant.
 
 
 

Appeal From the Administrative Law Court
 John D. McLeod, Administrative Law Judge

Unpublished Opinion No. 2012-UP-220
Heard March 13, 2012  Filed April 4, 2012    

AFFIRMED

 
 
 
 Eric G. Fosmire, of Columbia, for Appellant.
 Carlisle Roberts, Jr., and Jacquelyn S. Dickman, both of Columbia,
 and Sara P. Bazemore, of Myrtle Beach, for Respondent.
 
 
 

PER CURIAM:  Southern Environmental Services, Inc. (SESI) appeals from
 the Administrative Law Court (ALC) order finding it in violation of the South
 Carolina regulations governing asbestos removal projects, which was issued
 following a contested case hearing on the final decision of the South Carolina
 Department of Health and Environmental Control (DHEC).  SESI argues the ALC
 erred in determining: (1) SESI violated the asbestos regulations when the
 physical and air sample results collected by DHEC were excluded because chain
 of custody regarding the analysis of materials allegedly containing asbestos
 was not established; (2) DHEC inspectors need not be licensed to enforce the
 asbestos regulations; (3) DHEC's search of SESI's headquarters was
 constitutional; (4) SESI failed to comply with permit and license regulations
 for the Wade Hampton High School project; and (5) SESI violated the asbestos regulations
 when the evidence established a subcontractor was responsible for the
 polyethylene sheeting in the apartment at Quail Hollow Apartments.  We affirm.

 1. SESI argues the ALC
 erred in finding it violated the asbestos
 regulations because the court excluded the physical and air sample results
 collected by DHEC due to DHEC's failure to establish a sufficient chain of
 custody regarding the analysis of materials that allegedly contained asbestos. 
 It asserts evidence of the presence of a substance containing greater than one
 percent of asbestos is a condition precedent to finding a violation of the
 asbestos regulations.  During their inspection of the Wade Hampton project,
 DHEC inspectors observed open dumpsters that contained polyethylene bags
 labeled as asbestos.  See 25A S.C. Code Ann. Regs. 61-86.1(VIII)(B)(f)
 (Supp. 2011) (requiring asbestos waste to be in a secured, locked location).  They
 also observed moveable objects that SESI left in place during the project and
 polyethylene sheeting that had not been removed after the work was completed.  See 25A S.C. Code Ann. Regs. 61-86.1(X)(C)(1)(a)(6) (Supp. 2011) (requiring that
 prior to beginning work, all moveable objects must be cleaned and removed from
 work area); 25A S.C. Code Ann. Regs. 61-86.1(X)(C)(3)(a)(4), (7) and (8) (Supp.
 2011) (requiring that all polyethylene sheeting be removed and disposed of as
 asbestos-contaminated waste when project is completed).  Additionally, SESI had
 notified DHEC that it was only removing flooring; however, inspectors observed
 that SESI had removed both floor and ceiling material.  See 25A S.C.
 Code Ann. Regs. 61-86.1(X)(B)(4)(f) and (i) (Supp. 2011) (stating the written
 project notification and application must describe the work to be performed and
 an estimate of the approximate amount of asbestos-containing material to be
 removed).  During the inspection of the Quail Hollow Apartment, inspectors
 observed polyethylene sheeting in several places in Unit K-10, including
 sheeting that was balled up on the floor with an "Asbestos Danger"
 sign duct-taped to the inside.  See 25A S.C. Code Ann. Regs.
 61-86.1(X)(C)(3)(a)(4), (7) and (8) (Supp. 2011) (requiring that all
 polyethylene sheeting be removed and disposed of as asbestos-contaminated waste
 when project is completed).  Further, upon inspection of 35 Rutherford Drive,
 inspectors discovered no licensed air monitor was on site, and only one
 licensed supervisor was on site and he was not inside the contained work area,
 all of which were violations of the asbestos regulations.  See 25A S.C.
 Code Ann. Regs. 61-86.1(V)(C)(3)(b) (Supp. 2011) (requiring that at all times
 during abatement, at least one licensed supervisor must remain inside of each
 contained work area supervising the work); 25A S.C. Code Ann. Regs.
 61-86.1(VII)(D) (Supp. 2011) (requiring daily air sampling by a licensed air
 sampler).  Also, the decontamination unit did not have any water connected to
 it, which was a violation of the asbestos regulations.  See 25A S.C.
 Code Ann. Regs. 61-86.1(X)(C)(1)(a)(12) (Supp. 2011) (requiring a
 decontamination enclosure system to have a shower room with hot and cold or
 warm running water controllable at the tap).  Furthermore, SESI stipulated
 that: (1) it conducted asbestos abatement activities at Wade Hampton High
 School; (2) one of the dumpsters at the Wade Hampton location contained
 asbestos waste from the high school; (3) it removed asbestos from unit K-10 at
 the Quail Hollow apartments; and (4) it removed asbestos from an abandoned
 building at 35 Rutherford Drive.  Therefore, we find the evidence supports the
 ALC's findings that SESI violated the asbestos regulations despite the
 exclusion of the physical and air sample results collected by DHEC.  See Comm'rs of Pub. Works v. S.C. Dep't of
 Health & Envtl. Control, 372 S.C.
 351, 358, 641 S.E.2d 763, 766-67 (Ct. App. 2007) ("Under our standard of
 review, we may not substitute our judgment for that of the [ALC] as to the
 weight of the evidence on questions of fact unless the [ALC's] findings are
 clearly erroneous in view of the reliable, probative and substantial evidence
 in the whole record."); Leventis v. S.C. Dep't of Health & Envtl.
 Control, 340 S.C. 118, 130, 530 S.E.2d 643, 650 (Ct. App. 2000) (stating substantial
 evidence is not a mere scintilla of evidence, but evidence which, considering
 the record as a whole, would allow reasonable minds to reach the conclusion the
 ALC reached).    
 2. SESI argues the ALC erred in
 finding DHEC's inspectors need not be licensed to enforce the asbestos regulations. 
 It asserts that DHEC's inspectors did not hold the necessary licensing
 qualifications to conduct inspections; therefore, DHEC's inspections of SESI's
 projects are void as a matter of law because DHEC failed to comply with its own
 requirements.  The ALC determined DHEC inspectors are not required to be
 licensed as building inspectors under the asbestos regulations because a DHEC
 inspector or "government project inspector" is considered an
 "authorized visitor" under the asbestos regulations, which is
 different from a licensed "building inspector."  An "authorized
 visitor" is defined as "any representative of a regulatory or other
 agency having jurisdiction over the project" and "is limited to
 government project inspectors, police, paramedics, fire-safety personnel,
 nuclear plant operators, and insurance loss prevention safety auditors, or
 other personnel as approved on a case-by-case basis by the Department."  25A
 S.C. Code Ann. Regs. 61-86.1(I)(21) (Supp. 2011).  The ALC reasoned that a
 building inspector's responsibilities involve performing building inspections
 to identify the presence, location, and condition of asbestos, and collecting
 samples.  25A S.C. Code Ann. Regs. 61-86.1(I)(23) and (24) (Supp. 2011); 25A S.C.
 Code Ann. Regs. 68-86.1(VI) (Supp. 2011).  The court noted a building inspector
 must also comply with sampling procedures; prepare a detailed report based on
 his or her findings, including a description of non-suspect materials; and
 provide an assessment of all materials suspected to contain asbestos, including
 an evaluation of the material's current condition, estimated quantities, and
 potential for disturbance.  25A S.C. Code Ann. Regs. 68-86.1(VI) (Supp. 2011). 
 In contrast, the ALC determined the duties of DHEC asbestos inspectors involve
 inspecting a project involving known or alleged asbestos material to ensure
 compliance with applicable laws and regulations.  The court also noted DHEC
 asbestos inspectors are trained in accordance with DHEC and EPA policy and
 regulations.  Courts are to defer to an administrative agencys interpretation
 of its own regulations unless there is a compelling reason to differ.  Brownlee
 v. S.C. Dep't of Health & Envtl. Control, 382 S.C. 129, 136, 676 S.E.2d
 116, 120 (2009) (citation omitted).  In the proceedings below, DHEC
 interpreted the regulations as not requiring its inspectors to be licensed as building
 inspectors to enforce the asbestos regulations.  We find the ALC properly construed
 the regulations in a manner consistent with DHEC's interpretation.
 3. SESI argues the ALC erred in finding
 DHEC's search of SESI's headquarters was constitutional.  It asserts DHEC's
 search was unconstitutional because the DHEC inspector did not have a warrant,
 and he did not have proper consent to search the building; therefore, SESI argues
 this court should exclude the evidence obtained during the search as
 "fruit of the poisonous tree."  However, the ALC excluded the
 evidence obtained during the search of SESI's headquarters because of DHEC's
 failure to sufficiently establish the chain of custody; the ALC expressly
 stated the evidence was not considered in making its conclusions of law due to
 DHEC's failure to establish the chain of custody; and the ALC did not cite SESI
 for any violations related to the search.  Therefore, we find this issue is
 moot and decline to address it.  See Linda Mc Co. v. Shore, 390
 S.C. 543, 557, 703 S.E.2d 499, 506 (2010) ("An appellate court will not
 pass on moot and academic questions or make an adjudication where there remains
 no actual controversy." (quoting Curtis v. State, 345 S.C. 557,
 567, 549 S.E.2d 591, 596 (2001))); Sloan v. Friends of the Hunley, Inc.,
 369 S.C. 20, 26, 630 S.E.2d 474, 477 (2006) ("A moot case exists where a
 judgment rendered by the court will have no practical legal effect upon an
 existing controversy because an intervening event renders any grant of
 effectual relief impossible for the reviewing court.").
 4. SESI argues the ALC erred in finding
 it failed to comply with permit and license regulations for the Wade Hampton
 High School project.  It asserts it faxed its application for the project to
 DHEC on May 26, 2005, and its project dates were June 15 to June 25, 2005;
 therefore, the ALC should not have found it to be in violation of the license
 requirement.  However, SESI admits it did not pay the project fee at that time. 
 DHEC Regulation 61-86.1, subsections III(B)(1) and (2) state that an
 application for a license will not be processed unless it is accompanied by the
 required fee, and DHEC's receipt and deposit of fees submitted with an
 application "shall in no way indicate approval of the application or
 guarantee the issuance of a license."  25A S.C. Code Ann. Regs. 61-86.1(III)(B)(1)
 and (2) (Supp. 2011).  Furthermore, DHEC's senior asbestos inspector, Mark
 Fairleigh, testified license applications cannot be submitted to DHEC by fax
 and will not be considered by DHEC until the fee is paid; which in this case
 was more than a month after SESI had completed its work.  Therefore, we find
 the ALC did not err in finding SESI failed to comply with the asbestos
 regulations when it completed the project without a license.
 5. SESI argues the ALC erred in
 finding it violated the asbestos regulations because a drywall subcontractor
 was responsible for the polyethylene sheeting in the apartment at Quail Hollow
 Apartments.  When the DHEC inspector arrived at the apartment after SESI had
 completed the project to conduct an asbestos inspection, he observed
 polyethylene sheeting in several places in Unit K-10, including sheeting that
 was balled up on the floor with an "Asbestos Danger" sign duct-taped
 to the inside.  DHEC Regulation 61-86.1, subsections X(C)(1)(a)(5), (7), (8), (10),
 and (11), all require polyethylene sheeting to be used to isolate the
 contaminated areas from the uncontaminated areas.  25A S.C. Code Ann. Regs.
 61-86.1(X)(C)(1)(a)(5), (7), (8), (10) and (11) (Supp. 2011).  Subsections
 X(C)(3)(a)(4), (7), and (8) require that after an abatement project is
 completed, all polyethylene sheeting must be removed and disposed of as
 asbestos-contaminated waste.  25A S.C. Code Ann. Regs. 61-86.1(X)(C)(3)(a)(4), (7)
 and (8) (Supp. 2011).  Therefore, because
 the evidence supports the ALC's finding that SESI failed to remove the
 polyethylene sheeting after completing its asbestos work, we find the ALC did not err in affirming DHEC's
 determination that SEIS was in violation of the regulations.        

AFFIRMED.
FEW, C.J., and
 HUFF and SHORT, JJ., concur.